STELLA HART, RESPONDENT, v. CENTRAL RAILROAD COMPANY OF NEW JERSEY, PROSECUTOR.

Submitted May 17, 1929—Decided November 7, 1929.

Before Justices TRENCHARD, LLOYD and CASE.

For the prosecutor, *William A. Barkalow* (*Edwin F. Smith*, of counsel).

For the respondent, *Hershenstein & Finnerty*.

The opinion of the court was delivered by

LLOYD, J. This is a workmen's compensation proceeding by the widow of Stanley Hart, a car inspector employed by the Central Railroad Company, who was killed while in the performance of his duty. The question in the case is whether there was adequate proof that at the time of his death he was in intrastate service. The case was heard by Commissioner Corbin who made an award in favor of the widow. This was affirmed by Judge Eagen in the Hudson Pleas and is here for review by *certiorari*.

We think the result reached below should not be disturbed. Hart was a car inspector employed by the prosecutor whose duty it was to inspect cars that came into the yard of the Central Railroad Company in Jersey City. When killed it could be inferred that he was inspecting, or was about to inspect, cars which came into the yard and which might be used in interstate or intrastate service or both. It was fairly inferable that he was killed by the movement of a string of empty baggage cars on track No. 2. On this track were cars of the Baltimore and Ohio Railroad Company, the Reading Railroad Company and of the Central Railroad Company. None of the cars was at the moment in actual service. One of them was marked a "crippled car" which meant that repairs had to be effected, and it was in the vicinity of this crippled car that the deceased was last seen with tools in his hands. Cars were placed on this track for a double purpose. First, to be put in condition for service if out of order; and second, to await such service as they might be called into, whether in intrastate or interstate work.

The law is settled that the burden is on the petitioner to establish that the accident arose out of and in the course of

his employment in intrastate service and was not in interstate service. It is also settled that movable rolling stock that is not in course of interstate service is not engaged in that service and the rights of the employes are in such case remitted to the Workmen's Compensation law of the state. As stated by the present Chief Justice in the recent case of *Lincks* v. *Erie Railroad,* 91 *N. J. L.* 166, the rule is laid down thus:

"The fundamental question to be now decided, therefore, is whether the engine upon which the decedent had just finished his work, or that upon which he was about to commence his work, was, either of them, intended to be presently used in interstate or in intrastate commerce. If in the former, the carrier's liability is to be determined solely under the federal statute; if in the latter then the state statute applies."

The same rule is announced in the case of *Minneapolis Railroad Co.* v. *Winters,* 242 *U. S.* 353. It is also to be extracted from the cases that an instrument of transportation which is permanently in interstate commerce such as stations, road beds, bridges, &c., has that character affixed to it, and that it can never be alleged that it is not in such service. Rolling stock has no such character. It may at one moment be in interstate service and the next moment employed in a service wholly within the state. In the present case these cars were not in any actual service, nor were they in contemplation of actual service; none of them had been segregated for a service in either; none of them had been assigned to a train in contemplation of movement, though liable thereto, nor left off of a train, intending to complete later a journey already begun. We do not understand that mere liability of a car at rest to be called into either service is therefore impliedly in interstate commerce and if not it necessarily has only an intrastate relation to the workmen.

It is urged by the railroad that in this instance the major part of these cars belonged to the Baltimore and Ohio Railroad and the Reading Railroad Companies, corporations of other states, and therefore were permanently devoted to inter-

state service. This result by no means follows. Foreign corporations, including railroads, do business in this state and when such business is not actually interstate, it must of necessity be of a state character and its employes come within the Workmen's Compensation law. Incidentally it may be stated that it does not appear by any evidence in the case that the two railroads were even engaged in interstate commerce though perhaps we can assume this to be true. It does not appear that they were not engaged in intrastate commerce. Indeed common knowledge is that they do both. Whether the cars in question or any of them should be called into one or the other of these services, was purely optional with the railroad employes. None had been so designated.

In addition it must be recognized that the present action is not against either of these foreign companies, but against the Central Railroad Company, a corporation of this state, by whom deceased was employed, and the cars in question were on its tracks. If the petitioner has shown, as we think she has, that the cars on these tracks were not in interstate operation, her rights under the compensation laws accrued and she was entitled to recover thereunder.

The judgment is affirmed.