ALICE HANNA, DEFENDANT, v. ERIE RAILROAD COMPANY, PROSECUTOR.

Argued May 7, 1930—Decided November 14, 1930.

Before Justices PARKER, CAMPBELL and BODINE.

For the defendant, *Alexander M. MacLeod.*

For the prosecutor, *Hobart & Minard.*

PER CURIAM.

The prosecutor seeks to review an award of compensation under the statute. Alice Hanna, the defendant, is the mother of the decedent, William Hanna, who was fatally injured on the night of April 5th, 1927, while in the employ of the Erie Railroad Company at Secaucus. Compensation was awarded and from the award an appeal was taken to the Court of Common Pleas.

The Common Pleas Court found that the accident occurred in the course of the employment and arose out of the employment, and that the injury occurred while the decedent was engaged in intrastate commerce.

The findings of fact by the trial judge will not be disturbed, if they are supported by evidence. *Geisel* v. *Regina Co.*, 96 N. J. L. 31, 33; *affirmed,* 97 *Id.* 331; *Kauffeld* v. *G. F. Pfund & Sons, Ibid.* 335, 336.

The prosecutor argues that there was no evidence to justify the finding of the Court of Common Pleas that the accident arose out of and in the course of the employment, and that the decedent was not engaged in intrastate commerce.

The deceased had been working for eight or nine days before his death on what is known as cab work. Cab work is said to be the setting of the valves and piston packing in engines. Some of the engines on which he worked were used in the yard and some went out on the side lines. The side lines appear to be the line to Hackensack and the line to Greenwood Lake. It further appears that the deceased worked on the night shift. The cab work was done in the roundhouse or outside the machine shop. It was customary for the employes to eat lunch between three and three-twenty A. M. Some of the employes went over to the Y. M. C. A. across the street, while others went into the machine shop where no adequate benches or other facilities were provided for them, and ate their lunch wherever it might happen to suit them. In the machine shop was a planer, which was somewhat out of repair, and would start occasionally, if the power was still on, without the application of manual manipulation. Sometimes the employes sat on the planer. Although the foreman does not appear to have been in the machine shop at lunch time, still the custom of eating lunch in that shop seems well established and the use of the planer as an occasional seat was also established. No signs were displayed forbidding the men from sitting where they chose.

The deceased sat upon the planer—a friend was already there. The power was still on, and the machine apparently commenced operations without anyone moving the lever designed to put it in motion. The young man was cruelly injured and died almost immediately.

Within our decisions there was sufficient evidence of the intrastate character of the work to justify the conclusions of the Common Pleas Court. In *Bissett* v. *Lehigh Valley Railroad Co.,* 102 *N. J. L.* 283; *affirmed,* 103 *Id.* 172, it was held that a railroad employe, who at the time of his injury was repairing a pump on an engine used in shifting cars in

the railroad yard was not engaged in interstate commerce—his general work being the repair of engines and cars. Mr. Justice Katzenbach, in writing the opinion in that case, exhaustively reviews the prior decisions. In *Herzog* v. *Hines,* 95 *Id.* 98, a car repairer was repairing a freight car attached to several other cars in the freight yard. Since the instrument of commerce was entirely out of commission, the work was not being done in interstate commerce. In *Mathison* v. *Payne,* 98 *Id.* 87; 99 *Id.* 285, a roundhouse employe engaged to take care of engines used in interstate and intrastate commerce was held employed in both. In *Price* v. *Central Railroad Co., Ibid.* 425, an employe was held not engaged in interstate commerce, who was employed in repairing cars used in both sorts of commerce. In *Jayson* v. *Pennsylvania,* 101 *Id.* 159, a shop employe repairing a car withdrawn from interstate commerce for repairs was held not engaged in such commerce. See, also, *Hart* v. *Central Railroad,* 147 *Atl. Rep.* 733; affirmed October 20th, 1930.

The mere circumstances that the employe was eating his lunch does not seem to alter the case. *Zabriskie* v. *Erie Railroad,* 86 *N. J. L.* 266; *Terlecki* v. *Strauss,* 85 *Id.* 454; *affirmed,* 86 *Id.* 708.

In *Terlecki* v. *Strauss, supra,* a girl employed in a woolen factory had left her machine preparatory to going home. She was combing wool from her hair and was standing before a mirror for that purpose. It appeared that other girls had done likewise, and that the practice was not forbidden. The injured girl's hair got in the moving machinery and she was badly injured. Mr. Justice Swayze said: "It would be entirely too narrow a construction to limit the benefit of the statute to the time the workman is actually employed at his machine. He must have time to reach his machine and to get away from his employer's premises. In fact, it is a necessary implication of the contract of employment that the workman shall come to his work and shall leave with reasonable speed when the work is over. The preparation reasonably necessary for beginning work after the employer's premises are reached and for leaving when the work is over is a part

of the employment. A workman is none the less in the course of employment because he is engaged in changing his street clothes for his working clothes, or in changing his working clothes for his street clothes. In the present case it was reasonably necessary that the petitioner should comb her hair and remove the particles of wool before leaving the factory."

It is sought, however, to distinguish the case at bar on the ground that there was no proof that there was a custom to sit upon the planer, or that this custom was known to the foreman. The proofs, however, do show quite conclusively that it was the custom for the workers to eat their lunch in the machine shop. No other provision was made for them, except that they could go to the Y. M. C. A. across the street. No benches were arranged for them in the machine shop, but they sat wherever they chose, upon machinery or anything that was convenient, and the planer had been used on several occasions as a convenient place to sit and eat. There is the further circumstance that the planer was known to be out of order and would start up while the power was on without the application of any levers. The men were not warned of any danger or forbidden to use the machine shop as they saw fit.

In *Zabriskie* v. *Erie Railroad, supra,* no toilet facilities were provided at the place of work, and it was the custom of employes to cross a public street between the employer's premises in order to satisfy their needs. All this was known to the employer, and the court held that an employe injured, by being struck by an automobile on the public street while crossing the same in order to use the toilet, was injured by an accident arising out of and in the course of the employment.

In *Fisher* v. *Tidewater Building Co.,* 96 *N. J. L.* 103; affirmed, 97 *Id.* 324, it was held that: "When a workman was killed some distance from the place of his employment, while boarding a train on which the employer furnished free transportation from the place of employment to the workman's home, the accident causing the death was one which arose out of and in the course of his employment."

In *Blovelt* v. *Sawyer* (1904), 1 *K. B.* 271, the accident was to the workman during the dinner hour while he was eating his dinner on the premises. There was no rule as to the workman going or staying during the dinner hour. He was at liberty to do either. While he was eating his dinner a wall fell upon him. The court found that there was no break in his employment, and the workman was entitled to his compensation.

In *Rowland* v. *Wright* (1909), 1 *K. B.* 963, it appears that a teamster was in the stable in the course of his duties. While there he ate his dinner and was bitten by the stable cat. The court held that eating his dinner did not put an end to the course of his employment and the workman was allowed compensation, not because he was eating his dinner but because he was on the spot in the course of his employment.

In *Armstrong, Whitworth & Co.* v. *Redford* (1920), *A. C.* 757, a girl employed as a machinist left the works where she was employed, during the dinner hour, as the rules required, and went to a canteen provided by the employers for their women workers in another part of the premises. The canteen and the works were within the same curtilage, but by day the canteen could only be reached by the street. The workers were invited, but were not obliged, to use the canteen. After finishing her dinner the girl was hurrying down a flight of stone stairs leading from the canteen into the street in order to return to her work when she slipped and broke her ankle. She claimed compensation under the Workmen's Compensation act, 1906, and it was held that there was evidence upon which the arbitrator could find that the injury arose in the course of as well as out of the employment.

In the note to *Thomas* v. *Proctor and Gamble Manufacturing Co.*, 104 *Kans.* 432; *A. L. R.* 1145, 1151, the following appears: "In a number of cases it has been held that an injured workman is entitled to compensation for injuries received on the master's premises, although the accident occurred during the lunch hour when work was not actively in progress, where the eating of the lunch on the premises was with the master's knowledge and consent, express or implied.

"Thus an employe may be found to be performing service 'growing out of and incidental to his employment,' where he was seated on a large piece of rubber in a room in the factory at the noon hour, eating his lunch in accordance with the long established custom known by and tacitly consented to by his employer, and a pile of crude rubber near him unexpectedly fell on him, breaking his leg. *Racine Rubber Co.* v. *Industrial Commission* (1917), 165 *Wis.* 600."

It is finally argued that the case falls within the rule laid down in *Schmoll* v. *Weisbrod & Hess Brewing Co.,* 89 *N. J. L.* 150. We do not think so. In that case, the decedent, a collector for the brewery, was shot by an unknown person while returning to his wagon. Apparently robbery was the motive. The decision in that case is rested upon the simple ground that there was no fact or circumstance before the court that connected the shooting, either directly or indirectly, with the employment.

There is nothing in the case to justify a conclusion that the injury occurred by reason of horseplay or skylarking. *Hully* v. *Moosbrugger,* 88 *N. J. L.* 161.

The application will be denied.