AMERICAN EMPLOYERS' INS. CO. v.
WILLIAMS et al.

No. 12880.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 7, 1933.

Rehearing Denied Nov. 4, 1933.

W. B. Handley, of Dallas, for appellant.

E. W. Napier, of Wichita Falls, for appellees.

CONNER, Chief Justice.

This suit was instituted in the Seventy-Eighth district court of Wichita county on May 16, 1932, by Mrs. Alice M. Williams, widow of Robert F. Williams, deceased, for herself and as next friend for her minor children, Joseph Lester, Carl Samuel, and Art Willis Williams. Later, to wit, on July 11, 1932, the plaintiff amended her original petition in which, by order of the court, the names of Estelle Pruitt, née Williams, joined by her husband, B. V. Pruitt, and Grover C. Williams were inserted. Estelle Pruitt and Grover C. Williams were also children of Robert F. Williams, deceased, and were minors at the date of his death but had attained their majority prior to the institution of the suit. The suit was instituted by Mrs. Williams, for herself and children, against the American Employers' Insurance Company under the terms of the Workmen's Compensation Act (Vernon's Ann. Civ. St. art. 8306 et seq.).

The plaintiff, in addition to the necessary jurisdictional facts, alleged, in substance, that the deceased, Robert F. Williams, on and about the 6th day of November, 1929, and prior thereto, was in the employ of one G. W.

Mennis as a laborer under an oral contract of hire, and that, while engaged in the discharge of his duties as such employee, the deceased came in contact with an electrical wire highly charged with electricity and was thereby killed.

The defendant insurance company pleaded that the district court was without jurisdiction for the reason that Mrs. Alice Williams at the time she made her application before the Industrial Accident Board was without mental capacity· to do so and laboring under the disability of a lunacy judgment against her in the county court of Wichita county. The defendant also ·pleaded a general denial and specially that deceased, at the time of his ·death, was neither an employee of G. W. Mennis nor engaged in the usual course of his employer's business.

The trial was before a jury, which gave favorable answers to special issues submitted and upon which the court rendered a judgment in favor of Mrs. Alice Williams, Joseph Lester Williams, Carl Samuel Williams, and Art Willis Williams against the defendant, the American Employers' Insurance Company for the sum of $2,049.80, as principal, and $184.40, as accrued interest up to September 23, 1932, the same being the amount of accrued compensation with interest thereon at the rate of 6 per cent. per annum from· November 13, 1929 (one week after the date of Robert F. Williams' death), and for the further sum of $13.85 per week beginning on the 30th day of September, 1932, and continuing for a period of 212 weeks, together with interest upon all installments that might thereafter become past due at the rate of 6 per cent. per annum, and for all costs. It was further ordered that the moneys awarded to the plaintiffs named be apportioned one-half of the total amount of the recovery to Mrs. Alice Williams and to each of the minor plaintiffs named a one-sixth of the total recovery. The plaintiffs Estelle Pruitt, joined by her husband B. V. Pruitt, and Grover C. Williams, were denied all recovery.

From the judgment so rendered, the defendant insurance company alone appeals.

■ We overrule the contention that the district court was without jurisdiction on the ground alleged. While it is true that prior to the time Mrs. Williams applied to the Industrial Accident Board for compensation she had been adjudged a lunatic and confined in a sanitarium, the evidence is that, since the entry of the decree of lunacy and prior to the decree or ruling of the Industrial Accident Board upon the application, her sanity had been restored and a formal order of the county court entered restoring her to the status of a person sui juris. Under such circumstances, the mere fact that the decree of lunacy had not been set aside at the time she filed her application will not have the effect

we think of depriving the district court of jurisdiction. There is nothing in the Workmen's Compensation Act which prohibits the board from receiving an application of the kind even though presented by a party incompetent to sue. Mrs. Williams' application was in fact received, and in fact acted upon as stated after the restoration of her original mental status. Appellant only cites the case of Mitchell v. Stanton (Tex. Civ. App.) 139 S. W. 1033, 1039, but a reading of that opinion will show that the court said no more than that the judgment of lunacy in that case was "prima facie . evidence at least of lunacy." The presumption that Mrs. Williams was a lunatic at the time the ·decree of lunacy was entered is conclusive, but no authority has been cited to the effect that that presumption may not be rebutted to show her qualified and mentally capable of doing the acts complained of in presenting her claim to the board. .

In Jones Blue Book on Evidence, vol. 4, § 723, the author states that, while at common law insane persons could not be permitted to testify as witnesses, the rule is now firmly established, both in England and in this country, that a lunatic or insane person is admissible as a witness, if, on examination by the court or by evidence aliunde, he appears to have sufficient understanding to apprehend the nature and obligation of an oath and to be capable of giving a ·correct account of the matters that he has seen or heard, and in reference to which he is called to testify.

The Texarkana Court of Civil Appeals in the case of Clement v. Rainey et al., 50 S.W. (2d) 359, held that one who, in lunacy proceedings, had been adjudicated to be of unsound mind, was not necessarily incompetent to make a will.

Hence, as already stated, we think that regardless of the fact that Mrs. Williams, at the time of filing her application before the accident board, may have been presumptively of unsound mind, she was not necessarily so and the action of the board in receiving the application without objection appearing and later making its award at a time when a formal decree of her sanity had been entered cannot in reason be held to rob the district court of jurisdiction upon appeal in other respects held to be regular and authorized.

By assignments duly presented appellant also insists that the deceased, Williams, was not at the time of his death an employee of the subscriber of the appellant insurance company and did not receive his injury in the usual course of his employer's business.

There was evidence in behalf of appellees to the effect that Williams had been employed as a laborer by G. W. .Mennis for about a year when for some reason not appearing that former employment was. terminated.. While so employed by Mennis, he was occupying one

of his employer's houses. Upon his discharge from the former employment, Mennis, by his duly authorized agent, entered into an oral agreement with the deceased that he and his family could continue the occupancy of the house in which they were living for which he was to care for certain pumping operations on an oil lease owned by Mennis. The deceased, according to the terms of the agreement, was required to grease machinery, look after the motive power, etc., during evenings and mornings when not engaged performing labor for another party by whom he had been regularly employed. The evidence indicates that there was a well on each side of the power house in which the pumping machinery was inclosed; that Williams would grease the operating rods, look after the machinery, etc.; that at the time of his death he was notified of trouble in the power by the lights in his house going out and he went to the engine house to see what the trouble was and, while there, came in contact with a high voltage wire which killed him.

█ Under the terms' of our Workmen's Compensation Law, the deceased, if an employee of Mennis and if while so employed was killed in the course of his employment, was entitled to compensation. Article 8309 of the act declares that an "employee" shall mean every person in the service of another under any contract of hire, express or implied, oral or written, except one whose employment is not in the usual course of trade, business, profession, or occupation of his employer. The jury found in answer to special issues that the deceased, at the time of his death, was an employee of Mennis and also found that he was injured as shown while engaged in the employment and usual course of trade and business of his employer. While the testimony of Mennis' foreman was to the effect that the occupancy of the house by the deceased and his family at the time of his death was only permissive in the beginning and that the permission so given was revoked several weeks before Williams' death with the demand that he vacate the premises, yet Mrs. Williams testified that she was present and heard the oral agreement for the occupancy of the house for which the deceased agreed to look after the power house, machinery, etc., and that at no time prior to Williams' death did she know or hear of any notice to quit the premises, and she denied that on the Sunday before Williams' death that the foreman, as he testified, was at the home and again notified Williams to vacate. She further testified that Williams, up to the time of his death, continued his service looking after the power house, pumping rods, etc., and we think under the terms of the statute the credibility of the witnesses and the weight to be given to the testimony was for the jury, and we do not feel that we can disturb the jury's verdict on those vital issues.

In the case of Security Union Ins. Co. v. McClurkin, 35 S.W.(2d) 240, the Galveston Court of Civil Appeals held that an injury received by an employee in stepping on a needle, after leaving a telephone installed in his home and paid for by his employer, upon completion of a call made in connection with his employer's business, was compensable "as 'arising in course of employment.'" In Hanna v. Erie Railroad Co., 152 A. 179, 8 N. J. Misc. 829, it was held by the Supreme Court of New Jersey that injuries to an employee received by a planer while eating in the machine shop of his employer, was compensable. And in Schneider's Workmen's Compensation Law, vol. 1 (2d Ed.), p. 237 et seq., are to be found citations to a number of cases of the same general purport. For instance, one of the instances is that "though a man employed for an emergency job, loading ice upon a refrigerator car, the work to last a few hours, is a casual employee, he is within the protection of some acts where the work is the regular business of the employer." Citing numerous cases. Another is a case where "he (the employer) employed a man to top the trees. It was held, that it was for the purpose of the employer's trade or business and therefore under the act." It is also said that "the fact that the cause requiring the employment is unusual and extraordinary does not prevent the employment from being in the usual course of the employer's business, as where a rancher hired men to fight a fire to save the grass on his range, or where an automobile mechanic, who is present at a race on Sunday, to repair his employer's cars if necessary, or the fact that the employee was injured in the construction of a building which was being constructed to house coal, the handling of which was to be undertaken in addition to the employer's regular course of business."

█ We think, however, the court erred in his assessment and apportionment of the compensation to which the plaintiffs were entitled. Under section 8 of article 8306, of the compensation law, it is provided that: "If death should result from the injury the association hereinafter created shall pay the legal beneficiaries of the deceased employee a weekly payment equal to sixty per cent of his average weekly wages, but not more than $20.00 nor less than $7.00 per week, for a period of three hundred and sixty weeks from the date of the injury."

The jury found that the deceased's average weekly wages for the labor performed for Mennis was $4, but the court in assessing damages adopted the rate of $13.50 per week. There was no evidence or finding to sustain a weekly wage of $13.50. And un-

der the terms of the act which we have just quoted, the maximum weekly wage that may be adopted in the assessment of compensation to these appellees is $7. The succeeding section (8a) provides, in so far as applicable to the facts of this case, that: "The compensation provided for in the foregoing section of this law shall be for the sole and exclusive benefit of the surviving husband * * * and of the wife * * * and of the minor children * * * without regard to the question of dependency, * * * and the amount recovered thereunder shall not be liable for the debts of the deceased nor the debts of the beneficiary or beneficiaries and shall be distributed among the beneficiaries as may be entitled to the same as hereinbefore provided according to the laws of descent and distribution of this State; provided the right in such beneficiary or beneficiaries to recover compensation for death be determined by the facts that exist at the date of the death of the deceased and that said right be a complete, absolute and vested one."

 In the case of Moore v. Lumbermen's Reciprocal Ass'n, 258 S. W. 1051, by Section B of the Commission of Appeals, it was held that under the Employer's Liability Act, § 8a, as amended by the Acts of the 35th Legislature, chapter 103, a beneficiary's right to compensation for death of an employee, which is payable independently of the question of dependency, is a vested right which the statute vests in the beneficiaries named, and is transmissible to the heirs of the beneficiary, which right may be administered upon as a part of the beneficiary's estate. According to this ruling, Mrs. Estelle Pruitt, nee Williams, and Grover C. Williams, who were minors at the date of their father's death, were equally entitled to compensation with those named in the court's decree, and such right having vested in them, they, on the fact of the record, were entitled to a one-fifth interest in one-half of the compensation decreed by the court and the three minors named in the court's decree were not entitled to receive such interest. While this is true, we do not feel prepared to so reform the judgment in their favor, inasmuch as they have not appealed from the decree of the court denying them compensation nor have we an assignment of error which complains of the action of the court in this respect.

We conclude that the judgment below must be reformed and, as reformed, affirmed, as follows:

At date of judgment below, weekly installments of $7 per week for 150 weeks had accrued—each installment drew interest from its due date at the rate of 6 per cent. per annum to date of judgment, amount accrued for those 150 weeks at the rate of $7 per week, aggregating $1,050 principal, plus $90.30 interest then accrued, aggregating $1,140.30.

The appellant is liable for $7 per week for 210 weeks next occurring after the date of the judgment below plus interest at the rate of 6 per cent. per annum on each of those weekly installments from its due date which have not been, or may not in the future be, paid.

The full number of weekly installments so allowed being 360, of which 150 weeks accrued before judgment and 210 weeks accrued and/or to accrue after judgment, the latter (210 weeks) payable weekly from the date of the judgment below.

Under statutes of descent and distribution one-half of total compensation passed to widow, Mrs. Alice M. Williams. The other one-half passed to the five minor children, share and share alike. Therefore judgment to be rendered as follows: One-half of the total amount of compensation shown above to the widow, Mrs. Alice M. Williams; three-fifths of the remaining half to three children, Carl Samuel Williams, Art Willis Williams, and Joseph Lester Williams, share and share alike, i. e., each child entitled to one-fifth of one-half, or one-tenth of the whole, the costs of appeal to be taxed against appellees.

We have considered the assignments raising other questions, but we find nothing prejudicial and they will accordingly be overruled without discussion.

Reformed and, as reformed, affirmed.