New Jersey Department of Labor,
Workmen's Compensation Bureau.

JACK STELLAS, BY GEORGE STELLAS, AS NEXT FRIEND,
PETITIONER, v. THE WESTERN UNION TELEGRAPH
COMPANY, INCORPORATED, RESPONDENT.

Decided June 4, 1938.

For the petitioner, *Moore & Butler.*

For the respondent, *Bolte & Miller.*

This is a proceeding brought by Jack Stellas, as petitioner, and against The Western Union Telegraph Company, Incorporated, as respondent, seeking compensation under an act of the legislature of the State of New Jersey, entitled "An act prescribing the liability of an employer to make compensation for injuries received by an employe in the course of employment, establishing an elective schedule of compensation and regulating procedure for the determination of liability and compensation thereunder," approved April 4th, 1911, together with the several acts amendatory thereof and supplemental thereto.

A petition and answer were duly filed and the matter regularly came on for hearing before me, Harry S. Medinets, a deputy commissioner of compensation, of the Workmen's Compensation Bureau, on April 14th, 1938.

From the testimony produced before me, I find that Jack Stellas, the petitioner, was employed as a bicycle messenger by the Western Union Telegraph Company, the respondent.

He was required to report for work in uniform by seven-thirty in the morning for the purpose of delivering telegrams. On July 13th, 1937, he arrived at respondent's place of business just before seven-thirty A. M. He changed into uniform and reported for duty. After doing so, he noticed that the tire of his bicycle had a slow leak and was in need of repair. As a condition of his employment, young Stellas was required to provide his own bicycle and keep the same in a good state of repair. The office of the Western Union kept some bicycle repair supplies, but in this instance, however, it was found necessary that Stellas go to a bicycle shop to make the needed repairs. Stellas asked permission of his immediate superior to leave and make the necessary repairs to put the bicycle in good working condition. Upon receiving his superior's approval and permission to absent himself, since there were a number of boys ahead of him who would be available to deliver any messages which came in, he proceeded to the bicycle repair shop. While en route to the store, he was struck and injured by an automobile. His claim for compensation is predicated upon the fact that this injury arose out of and in the course of his employment.

In construing the Workmen's Compensation act, it should be remembered that the statute is remedial and should be liberally and broadly construed. *O'Mara* v. *Kirsch,* 106 *N. J. L.* 151; 147 *Atl. Rep.* 511; *Schmid* v. *Stanton Forging Co.,* 104 *N. J. L.* 471; 142 *Atl. Rep.* 4; *Bodnarik* v. *Empire Floor, &c., Co.,* 8 *N. J. Mis. R.* 718; 151 *Atl. Rep.* 908; *Steers, Inc.,* v. *Turner Constr. Co.,* 104 *N. J. L.* 189; 139 *Atl. Rep.* 42. Therefore, what accidents should be held compensable "as arising out of the course of employment" have been given a broad interpretation.

In *Hall* v. *Doremus,* 114 *N. J. L.* 47 (at *p. 50*) ; 175 *Atl. Rep.* 369, which case is also cited by respondent, the court said:

"And it would seem that on principle, even though the accident resulted from the doing in an emergency of something that is not strictly within the scope of the employment, it may, nevertheless, be one that arises out of and in the course of the employment."

And in *Bryant* v. *Fissell,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458, another case relied on by the respondent, the court declared (at *p.* 70):

"And a risk may be incidental to the employment when it is either an ordinary risk directly connected with the employment or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment."

It may be noted here that respondent could and should have foreseen, because of its long experience in employing boys with bicycles, that a bicycle tire may, on occasion, become flat and the case above cited is certainly controlling on this point. In the two cases last cited, compensation was awarded.

One of the earliest cases arising under the act was *Terlecki* v. *Strauss,* 85 *N. J. L.* 454; 89 *Atl. Rep.* 1023; *affirmed,* 86 *N. J. L.* 708; 92 *Atl. Rep.* 1087, where a girl's hair was injured by a machine while she was combing it preparatory to going home after she had finished work. Mr. Justice Swayze held that the accident was compensable as arising out of and in the course of her employment. "The preparation reasonably necessary for beginning work after the employer's premises are reached, and for leaving when the work is over, is part of the employment. * * * The employment was not indeed the proximate cause of the accident, but it was a cause in the sense that but for the employment, the accident would not have happened. The employment was one of the necessary antecedents to the accident." The opinion in this case certainly applies in its entirety to the case at bar.

*Bryant* v. *Fissell, supra,* also enunciated the principle that, "An accident arises in the course of employment if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time." *Foley* v. *Home Rubber Co.,* 89 *N. J. L.* 474.

Under these principles, it is not necessary that the employe be actually engaged in prosecuting his designated work in order to obtain compensation. He need only be doing some act reasonably necessary and incidental to his employment.

A school janitor, returning home from evening church services, decided to look after the school fires, because of a sudden fall in the temperature. He suffered injury while going home for the school keys. The accident was held compensable. *Kromley* v. *Board of Education*, 180 *Atl. Rep.* 546.

Where part of an employe's duties was to take milk pails home and wash them, it was held that he was entitled to compensation, after being struck by an automobile while carrying the pails back to the farm. *Barkman* v. *Meyer*, 12 *N. J. Mis. R.* 287; 171 *Atl. Rep.* 536.

It is indeed possible that a workman may not even be doing acts. incidental to furthering his employment, but actually be doing some action purely for his own personal convenience which may be so closely connected with his employment as to entitle him to compensation. A barge captain who went ashore to get some food, visited a friend for three or four hours and was struck by a train on returning to the barge. It was held he was entitled to compensation. *Ramsey* v. *Leahey*, 102 *N. J. L.* 513; 134 *Atl. Rep.* 91; *affirmed*, 103 *N. J. L.* 501; 135 *Atl. Rep.* 919.

An employe who was given leave to attend to his own personal affairs and was injured while driving back to work was entitled to compensation. *Rachels* v. *Pepoon*, 5 *N. J. Mis. R.* 122; 135 *Atl. Rep.* 684; *affirmed*, 104 *N. J. L.* 183; 139 *Atl. Rep.* 923. It is the contention of the respondent that Jack Stellas was on a personal and private mission. Under the above cited case, it would certainly appear that he is entitled to compensation. It is the contention of the petitioner, however, that Stellas was not on his own mission, but was performing a duty necessary to the continuation of his employment. A truck driver, who left his truck to go into a public house to get a pint of beer and who was struck, was held to have met with an accident arising out of and in the course of employment. *Martin* v. *Lovibond*, 2 *K. B.* 227; *Salamone* v. *Ansetta*, 16 *N. J. Mis. R.* 96; 194 *Atl. Rep.* 798. Some other cases in which the accidents have also been held to have arisen out of and in the course of employment are: *Zabriskie* v. *Erie Railroad Co.*, 85 *N. J. L.* 157; 88 *Atl. Rep.*

824; *affirmed, 86 N. J. L.* 266; 92 *Atl. Rep.* 385; *Hart* v. *Wilhelms,* 31 *N. J. L. J.* 13; *Hanna* v. *Erie Railroad Co.,* 8 *N. J. Mis. R.* 829; 152 *Atl. Rep.* 179; *Jasnig* v. *Winter, &c.,* 115 *N. J. L.* 320.

However, our case is not nearly as extreme as those cited above. The boy was not doing an errand for his own personal convenience, but an act absolutely necessary and essential if he was to continue in his employment. The contention that he is not entitled to compensation because he was paid only when he delivered telegrams is not sound. A recent New Jersey case decided that a golf caddy, who was paid only by golfers, but who was under the control of the caddy master in the meanwhile, was entitled to compensation for falling out of a tree which he climbed to pick apples at the caddy master's request. *Bird* v. *Lake Hopalcong Country Club,* 119 *N. J. L.* 415; 197 *Atl. Rep.* 287. In our case, the boy had already come under the control of his superior to the extent that it was necessary to ask permission to leave to have his tire fixed.

Much reliance is placed by respondent on the case of *Postal Telegraph Cable Co.* v. *Industrial Accident Com.,* 1 *Cal.* (*2d*) 730; 37 *Pac. Rep.* (*2d*) 441; 96 *A. L. R.* 460, which was decided by a divided court. A dissenting opinion held as follows:

"The latest decision appears to be influenced largely by the temporary and fortuitous change in the personnel of the justices qualified to pass upon it."

He then cited a case in point from Texas, *Maryland Casualty Co.* v. *Smith,* 40 *S. W. Rep.* (*2d*) 913, where an employe who had to furnish his own motorcycle, was injured on the way to work and was granted compensation. In the Postal Telegraph case, also, the employe was on his way to work and had not as yet reported. But the Postal case seems to be contrary to the weight of authority, since in most jurisdictions it is held that an employe who must furnish his own vehicle and is preparing for work or is going to or from work is within the scope of his employment. A fireman was killed by carbon monoxide gas from his own automobile, used prin-

cipally for municipal purposes. He was in his own garage, was overcome while preparing to go to a firemen's convention, but was, nevertheless, held entitled to compensation. *Struve* v. *Frement* (*Neb.*), 250 *N. W. Rep.* 663. A salesman likewise killed while preparing his car for use in work the following day was held entitled to compensation. *Derleth* v. *Roach & Seeber Co.* (*Mich.*), 198 *N. W. Rep.* 948; 36 *A. L. R.* 472. Several other cases holding that employes while preparing or working on their own vehicles, and in some cases, not having reported for work and while still at home, have been entitled to compensation are as follows:

*Kingsley* v. *Donovan,* 155 *N. Y. S.* 801; *Marley* v. *Johnson & Co.* (*Iowa*), 244 *N. W. Rep.* (*2d*) 833; 85 *A. L. R.* 969; Annotations at 85 *A. L. R.* 978 and 96 *A. L. R.* 467.

*Tewes* v. *Sweeney Lithograph Co.,* 3 *N. J. Mis. R.* 807, is a case relied on by respondent to dispute petitioner's contention. The facts in this case are not at all similar and no analogy exists between the Tewes case and the case at bar. Tewes was repairing his automobile used in Sweeney's business at three o'clock on a Saturday afternoon. There was nothing in this case to show that the car was being repaired preparatory to going to work. Tewes may have been having his car put in order for the purpose of going on a Sunday afternoon pleasure jaunt. On the other hand, Stellas had already reported to work and was going to have his bicycle fixed, so that he could continue at his job.

*Carroll* v. *Western Union Telegraph Co.* (*Wash.*), 17 *Pac. Rep.* (*2d*) 49, is another case strongly relied on by the respondent. This case, petitioner contends, is not applicable. In the first place, this case was not decided under the Workmen's Compensation act. It was a negligence action by a third party against the Western Union resulting from an injury sustained by the plaintiff who was struck by a motorcycle operated by a messenger boy. Compensation law was in no way involved and the entire action was based on and was decided with reference to the liability of a third person and not to an employe. The liability enforceable in a proceeding under the Workmen's Compensation act is not one arising

out of negligence, but a contractual obligation created by the Compensation act with the consent of both the employer and employe. *Winfield* v. *Erie Railroad Co.,* 88 *N. J. L.* 619; 96 *Atl. Rep.* 394; reversed on other grounds, 244 *U. S.* 170; *Foley* v. *Home Rubber Co., supra.*

"It is based upon the proposition that the inherent risks of the employment should be placed upon the shoulders of the employer, who can protect himself by an addition to the price of his product and so cause the burden ultimately to fall upon the consumer; that the indemnity to an injured employe should be as much a charge upon the business as the cost of replacing or repairing disabled or defective machinery. * * * Under the former system the loss falls immediately upon the employe, who is almost invariably unable to bear it, and therefore, ultimately upon the community, which is taxed for the support of the indigent; and that the former system was uncertain, unscientific and wasteful and festers a spirit of antagonism between employer and employe, which it is the interest of the state to remove." *Weber* v. *Mahr & Stockhart,* 41 *N. J. L. J.* 207.

The Carroll case might be further distinguished on the ground that the employe had gone out to get horn brackets, which were certainly not absolutely necessary for the continuance of his employment and it cannot be denied that a tire is absolutely essential to the operation of a bicycle.

Further argument, in view of the above cases, would be needless. It is the contention of the petitioner, and I so find that Jack Stellas, who had reported to work and found it necessary to take his bicycle to the repair shop for tire repairs, was injured while he was in the course of, and that the injury arose out of his employment.

I do hereby find and determine the following additional facts:

1. That the respondent had notice of the accident.

2. That the petitioner earned $5.36 a week at the time of his accident.

3. That the petitioner incurred medical bills amounting to $120, which is a proper charge against the respondent.

4. That there is due the Atlantic City Hospital $104.50 for the necessary hospitalization of the petitioner as the result of said accident.

5. That the petitioner suffered temporary disability from July 13th, 1937, the date of the accident, to September 3d, 1937, a period of seven and three-sevenths weeks, for which he is entitled to compensation.

It is, therefore, on this 4th day of June, 1938, ordered, that judgment be entered in favor of the petitioner and against the respondent.

\*        \*        \*        \*        \*        \*        \*

HARRY S. MEDINETS,
*Deputy Commissioner of Compensation.*