### No. 21,995.

DAISY THOMAS, a Minor, by Her Next Friend, *Appellee*, v. THE PROCTOR & GAMBLE MANUFACTURING COMPANY, *Appellant*.

#### SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Employee Injured During Noon Intermission— Liability of Employer.* In an action under the workmen's compensation law there was evidence that the plaintiff, a seventeen-year-old girl, who was paid by the hour, was injured during a half-hour intermission at noon while, although at liberty to leave the premises, she remained there, and after eating her lunch engaged with fellow employees in accordance with a custom known to and approved by her employer, in riding on a truck, her injury being caused by falling from the truck while it was being drawn by a fellow employee; *held*, that a finding was justified that the accident occurred in the course of her employment.

2. SAME — *Evidence — Findings.* It is further held that the evidence stated was sufficient to support a finding that the plaintiff's injury arose out of her employment.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed March 8, 1919. Affirmed.

Thomas v. Manufacturing Co.

*J. K. Cubbison,* and *William G. Holt,* both of Kansas City, for the appellant.

*Arthur J. Stanley,* and *Guy E. Stanley,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: Daisy Thomas, an employee of the Proctor & Gamble Manufacturing Company, about 17 years of age, recovered a judgment against her employer under the workmen's compensation law, and the defendant appeals.

The principal question involved is whether the plaintiff's injury was one arising out of and in the course of her employment. A suggestion is made that it did not result from accident, but the occurrence relied upon seems clearly to fall within the definition of that term. The evidence in behalf of the plaintiff tended to show these facts: She had been working for the defendant a little over five months. Her hours were from 7 to 12 and from 12:30 to 5:30, except on Saturdays, when she did not work in the afternoon. She was paid by the hour. Her custom was to take her lunch with her and eat during the interval between noon and 12:30, which was allowed for that purpose, in the room where she worked, with the other girls in her department, seven or eight in number. The eating of lunch generally occupied about fifteen minutes. In the remaining fifteen minutes the girls, including the plaintiff, were in the habit of amusing themselves by riding on a small truck used in their department to pull boxes on. The girls had asked the foreman of this department if they could do this, and he had told them they could, but to be careful, and that he did n't want any men up there. He knew of the practice and did not object to it; nor did any other representative of the company. During the noon half hour the girls were at liberty to go where they pleased. They hardly ever went down to the restaurants, however, because of the shortness of the time; if they did so they had to run in order to be back by 12:30. On the day of the accident one girl was drawing the truck, while the plaintiff with two others were kneeling on it. They had ridden from the powder room, where they worked, into the wareroom, and were near the door between the two on the return trip when in turning a corner the truck slid and

28—104 KAN.

one girl jumped off. The other two fell to the floor, the plaintiff receiving injuries to her knee and ankle. This was a few minutes before 12:30.

The evidence for the defendant tended to show these facts: The company had a lawn and recreation ground, about an acre in extent, fenced in with its buildings, and five or six acres outside, including a ball ground, all of which were accessible to the employees when not at work. The defendant had no control over them during the noon intermission. Usually at this time half of the girls went down to a restaurant on or near the factory premises. The work of the girls in the plaintiff's department was putting paper boxes on the powder machine. They had nothing to do with the trucks, which were handled by men. The assistant superintendent had cautioned the plaintiff against using the trucks, telling her that it was against the rules and very dangerous. He knew the girls had ridden on the trucks, and he and other representatives of the company frequently warned them against the practice. The subforeman of the powder room (called the foreman by the plaintiff) had no authority to permit the girls to use the trucks as playthings. All the foremen were instructed to prevent the girls from getting on the trucks.

1. The conflict of evidence as to the attitude of the company toward the girls' practice of playing with the trucks must of course be resolved in favor of the plaintiff. In order for the judgment to be upheld the evidence must have warranted two findings—that the plaintiff was injured in the course of her employment, and that the injury arose out of her employment. The fact that she was working by the hour and that the accident took place out of working hours does not conclusively establish that it did not occur in the course of her employment. The shortness of the intermission suggests that it was the expectation that most of the employees would remain on the premises, and the practice shown by the evidence confirms this. The purpose of the plaintiff and her associates in remaining in the factory after their lunch had been eaten was presumably to be on hand when work commenced, in order that there might be no delay—a matter in which the employer had an obvious interest. Their situation was quite like that of a workman who arrives at the factory and is fully prepared to begin work a few minutes before the whistle blows.

Thomas v. Manufacturing Co.

In the leading English case on the subject, which has been frequently cited with approval in this country, the scope of the decision was fairly indicated by this language of the head-note:

"A workman was paid by the hour for the number of hours per week that he was actually engaged on his work, not including the mid-day dinner hour. During that hour he was at liberty to stay and take his meal on the premises, or to go elsewhere. He stayed on the premises, and sat down to eat his dinner, and while so doing a wall fell upon him, and he was injured. . . . *Held,* that during the dinner hour there had been no break in the employment of the workman, and that he was entitled to claim compensation." (*Blovelt v. Sawyer,* 1 K. B., 1904, 271.)

In the opinion of the Master of the Rolls the whole situation was gone over in these words:

"On the evidence as it stands on the judge's notes I should have felt no difficulty, because it would appear *prima facie* to indicate that the man was in his master's employment during the whole of each day, from the time at which he went to his work to the time when he came away, and equally during the dinner hour, if he stayed, as during any other part of the time. He would be there on the contract with his master during all those hours, either directly in order to do that for which he was employed or for some purpose ancillary thereto. That would embrace all his movements within the ambit of the factory, going or coming or stopping there for any purpose ancillary to his work. But we are told that there were admissions made between the parties, which do not appear on the judge's note, that men in the position of the applicant were not paid by the day or week, but the hour, and that the dinner hour was excluded from the computation of his wages, and was not a time during which he was earning pay. That creates a difficulty, or, at all events, requires consideration. It seems to me, however, that if the dinner hour can be brought in as part of the time which is given by the workman for some purpose ancillary to his work, such as feeding himself, which is, of course, essential to enable him to do his work, it would be taking too technical a view to say that the pause in the actual course of his work for the purpose of eating his dinner was a break in his employment from the time that he stopped work to the time at which he began again. It seems to me that, notwithstanding what is alleged as to the payment being for the hours in which the applicant was actually engaged in work and not for the time in which he took his meals, we must take a broader view, and treat him as continuing in the employment of the master by the consent of the master, inasmuch as it is for the master's advantage that the workmen should have an opportunity to feed themselves. A workman would do his work all the better by taking his meal at that time, and if it is part of the contract between him and his master that he may do so upon the works instead of going away, that may be a matter of mutual convenience. A man might, for instance, live

Thomas v. Manufacturing Co.

at a distance, and it might be desirable, from the master's point of view, that he should not tire himself by going to and fro for his food instead of reserving his strength for his work. It does not seem to me that, as a matter of law, it can be said that, when sitting down to his dinner, the applicant had ceased to be in his master's employment. From the mere facts that he was not paid for this particular time and that he was not engaged in the main purpose of his work it cannot, as a matter of law, be said that he had ceased to be in the employment of his master." (p. 273.)

One of the Lords Justices said:

"It also appears that he was not obliged to leave the place where he was working and obtain shelter and food elsewhere. That being the case, how can it be said that this accident did not occur in the course of his employment?" (p. 275.)

Another added:

"In my view it can make no difference if the fact is that by the terms of the particular engagement the workman was to have the right, if so minded, to get his dinner on the employer's premises. I think it would be to place a narrow construction on the act if we held that the accident to the applicant did not occur in the course of his employment." (p. 276.)

Of an employee who during the noon intermission, after eating his lunch on the premises, fell into the river and was drowned, it has been said:

"All the circumstances and facts tend to show that up to this time he expected to resume his work when lunching time had expired, and hence he was within the scope of his service when walking at this place." (*Milwaukee Western F. Co. v. Industrial Commission*, 159 Wis. 635, 642.)

Other expressions bearing on the matter are:

"The relation of master and servant, in so far as it involves the obligation of the master to protect the servant, is not suspended during the noon hour, where the master expressly, or by fair implication, invites his servants to remain on the premises in the immediate vicinity of the work." (Bradbury's Workmen's Compensation, 3d ed., 524.)

"As directly applied to the noon intermission, it is a long and well-settled rule that the service tie, or contractual relations and obligations between master and servant, is not broken by such suspension of all activities directly beneficial to the employer." (*Haller v. City of Lansing*, 195 Mich. 753, 758.)

(See, also, Boyd's Workmen's Compensation, § 481; 1 Honnold on Workmen's Compensation, § 111; 172 N. Y. Supp. 724; *Racine Rubber Co. v. Industrial Commission*, 165 Wis. 600; *Griffith v. Cole Bros. et al.*, 165 N. W. 577 [Iowa]; *Riley v. Cudahy Packing Co.*, 82 Neb. 319; *In re Sundine*, 218 Mass. 1.)

We conclude that there was room for a finding that the plaintiff's injury occurred in the course of her employment. If it had been the result of some accident which was due to the physical conditions under which the work was performed—say to the falling of plaster in the room where the girls were playing—this would be quite obvious, and the judgment for the plaintiff would clearly be warranted.

2. Whether the plaintiff's injury arose out of her employment is a more difficult question. Injuries received in play are not usually capable of being so classified. Two illustrative cases are reported, passed upon by a commission and a committee of arbitration, which are in some respects quite similar to that under consideration. (*Socquet v. Connecticut Mills Co.*, Conn. W. C. C. C. Digest, 1914-1916, p. 653; *Thompson v. W. L. Douglas Shoe Co.*, 2 Mass. W. C. A. 145.) If the present case is to be taken out of the general rule it must be upon the ground that the habit of the girl employees to play with the trucks during the noon intermission, with the knowledge and express consent of the foreman, and without objection by any one representing the defendant, made such practice one of the conditions under which the business was carried on, upon much the same principle as employers are held liable for the results of horseplay which has grown into a custom. (*White v. Stock Yards Co.*, ante, p. 90, 177 Pac. 522.) Injuries have been held to arise out of the employment whenever they are "such as the character of the business or the conditions under which it is carried on make likely, and the result either was or should have been in the contemplation of the employer." (*Jacquemin et al. v. Turner & Semour Manufacturing Co.*, 103 Atl. 115 [Conn.].) The plaintiff's participation in the use of the truck would not seem necessarily to bar her recovery, her conduct being of a kind to be expected in girls of her age, and the question of her want of care not being material, the action not being founded on her employer's negligence.

The trial court gave an instruction to the effect that if the plaintiff was injured as a direct and natural result of a risk reasonably incident to the employment in which she was engaged, it must be considered as arising out of and in the course of her employment. This is complained of, but substantially the test proposed has often been approved. (*Challis v. London*

*and South Western Railway*, 2 K. B., 1905, 154, 157; *Brice v. Edward Lloyd, Limited*, 2 K. B., 1909, 804, 810; *Holland-St. Louis Sugar Co. v. Shraluka*, 116 N. E. 330 [Ind.]; *Pace v. Appanoose County*, 168 N. W. 916 [Iowa]; *Hulley v. Moosbrugger*, 88 N. J. L. 161. See, also, *Benson v. Bush*, ante, p. 198, 178 Pac. 747.)

In a case in which the decision was against the employee the general rule was thus stated and illustrated:

"The same right to compensation will follow if an injury arising from a risk of the business is suffered while the employee is doing something which, although quite outside of his obligatory duty, is permitted by his employer for their mutual convenience, such as eating his dinner on the premises or any similar act to the performance of which the employer has assented.

"In the present case the commissioner has found in substance, if not in words, that the employer knew of his employee's custom of heating bottles in the dry room at the mouth of the hot-air pipe, and, upon principles familiar to courts before compensation acts were invented, the right to so heat bottles became, by the tacit consent of the employer, a term or condition added to the contract of employment; so that, if the injury, which clearly arose from a risk of the business, had occurred while the claimant was engaged in heating his bottle at the customary time and place, he would doubtless have been entitled to compensation." (*Mann v. Glastonbury Knitting Co.*, 90 Conn. 116, 120-121.)

In a case where during the noon hour an employee was found crushed by an elevator it was said:

"The deceased was required to take his lunch to the plant with him and was permitted and expected to eat it upon the premises. No particular place was assigned to any of the employees to eat their lunch, but each man was permitted to eat it wherever he desired about the plant. All the employees used the elevator during the lunch hour as they had occasion to, just as they used it during the hours the plant was in operation. Whether the deceased was negligent in his operation of the elevator, or in attempting to get off while it was in motion, is immaterial. . . . The proof amply sustains the finding that the accident arose out of and in the course of the employment." (*Humphrey v. Industrial Commission*, 120 N. E. 814, 816, 817 [Ill.].)

A workman has been allowed to recover under the compensation act where he caused an explosion by lighting his pipe near a gasoline can in a tool house to which he had gone to eat his dinner, having violated no rule and not knowing of the presence of the vapor. (*Haller v. Lansing*, 195 Mich. 753.) In *Dzikowska v. Superior Steel Co.*, 103 Atl. 351, [Pa.], the employee was permitted to recover where he set fire to his

oily apron while lighting a cigarette; and in *Whiting-Mead Commercial Co. v. Industrial Accident Co.*, 173 Pac. 1105 [Cal.], an employee's injury, due to his setting fire in the same way to a turpentine-soaked bandage on his hand, was held to fall within this rule, quoted from another case:

"Such acts as are necessary to the life, comfort and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work. . . . That such acts will be done in the course of employment is necessarily contemplated and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment." (*Archibald v. Compensation Commissioner*, 77 W. Va. 448, 451, 452.)

It would perhaps not unduly extend the principle to say that the employer might, under some circumstances, have an interest in his employee's taking suitable exercise in a brief interval allowed for refreshment and rest.

Inasmuch as the evidence may be regarded as establishing that the play in which the plaintiff was injured had become a settled custom, with the knowledge and indeed the express approval of the foreman in charge of the department, and without objection on the part of any one, the court is of the opinion that her injury may be regarded not only as having occurred in the course of her employment, but as having arisen out of it.

The judgment is affirmed.