THERESA N. BOLOS, RESPONDENT, v. TRENTON FIRE CLAY AND PORCELAIN COMPANY, PROSECUTOR.

Submitted January 30, 1926—Decided June 15, 1926.

At the regular noon lunch time the decedent left his employer's truck, on which he was a helper, at the brick shed on his employer's premises, and ate his lunch at the barn, also on the premises. When the whistle blew for him to resume work at the termination of the noon recess, he started for his truck. Observing another of his employer's trucks starting from the vicinity of the barn and going to the brick shed, he jumped upon its running-board. To get to the brick shed it was necessary for the truck to travel about six hundred feet, in part over a public street abutting and paralleling a part of the premises. In turning back from the street into the premises the decedent was thrown from the truck and killed. *Held*, that the accident arose out of and in the course of his employment.

---

On *certiorari*.

Before Justices TRENCHARD and KATZENBACH.

For the, prosecutor, *Aaron V. Dawes.*

For the respondent, *Herbert W. Backes.*

The opinion of the court was delivered by

TRENCHARD, J.    This writ, sued out by the employer, brings up for review the action of the Mercer County Court of Common Pleas affirming the judgment of the workmen's compensation bureau, awarding compensation to the petitioner on account of the death of George Bolos, her husband.

Our examination of the record, in the light of the excellent briefs submitted by the respective parties, leads us to the conclusion that the judgment should not be disturbed.

It appears that Bolos was an employe of the Trenton Fire Clay and Porcelain Company, engaged as a helper upon a truck belonging to the company. The working hours were from seven o'clock in the morning until twelve o'clock noon, and from twelve-thirty P. M. until five P. M.

On May 18th, 1924, the company was using two trucks for the purpose of carting bricks from one place on its premises to another place on the premises known as the brick shed. These trucks were manned by a driver and a helper on each, and when the noon whistle blew, the truck upon which Bolos was employed was partly filled with bricks at the brick shed and the driver and Bolos left the truck there to go for lunch. Bolos ate his lunch in the barn hard by the garage of the company, and on its premises, as was customary with some of the workmen. The other truck was in the garage during the noon hour. This garage was used for housing the trucks that were not in, operation in the yard. After the whistle blew at twelve-thirty to resume work at the termination of the lunch hour, the truck which was in the garage started to go to the brick shed, and Bolos, following the truck out of the garage, jumped on the running-board to ride back to his truck. To reach it at the brick shed, which was about six hundred feet from the garage, the truck traversed in part a public

street abutting and paralleling the premises of the company. When the truck turned off the street to go into the yard, Bolos was thrown from the running-board and sustained injuries which resulted in his death.

The prosecutor attacks the findings of the workmen's compensation bureau and the determination of the Common Pleas Court on the ground that the accident which resulted in the death of Bolos was not one which arose out of and in the course of his employment.

We think that contention is not well founded either in law or in fact.

The prosecutor argues that "the employment did not begin until he [decedent] reached his truck at the brick shed." But we think that is not so. He was already on the premises. His working time, or time of employment, began when, upon the expiration of the noon recess, he left the barn for the purpose of getting back to that part of the premises where his truck was located. *Terlecki* v. *Strauss,* 85 *N. J. L.* 454; *affirmed,* 86 *Id.* 708.

It is argued that it was negligence on his part to jump on the running-board of the truck. But negligence does not bar recovery in a proceeding such as this under section 2 of the Workmen's Compensation act. *Taylor* v. *Seabrook,* 87 *N. J. L.* 407.

It is contended that the decedent had notice that no one except the drivers were to ride upon the trucks, but we find no satisfactory evidence of any such notice.

It is argued that his place of duty was at the truck *at twelve-thirty o'clock, when the whistle blew,* and because of his failure to be there at that time the employer was relieved of liability. We think not. He may have been subject to discipline by the employer if any such strict rule existed (of which we find no evidence), but it cannot be said that he was not within the scope of his employment.

The test to be applied to determine whether or not an accident arose out of and in the course of employment has been stated in *Bryant* v. *Fissell,* 84 *N. J. L.* 72, as follows:

"An accident arises in the course of the employment if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." * * * "An accident arises out of the employment when it is something the risk of which might have been contemplated by a reasonable person, when entering the employment, as incidental to it." * * * "A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service." * * * "A risk may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected · with the employment owing. to the special nature of the employment."

Surely, Bolos may have reasonably jumped on the running-board of the truck to get back to his own car, and such action may have been contemplated by a reasonable person at the time of the employment. This was done during the time in which he was employed, and the accident happened at a place where he may reasonably have been during that time. To get from the barn to the brick shed, it was necessary, apparently, for him to traverse the street in part. The act of jumping on the running-board of the car was an incident of employment, namely, to get back to the brick shed where his truck was located. If he had been walking back to the brick shed and had been struck by this same truck and injured, surely such an injury would have been incidental to the decedent's employment.

In the case of *Horn* v. *Arnett,* 91 *N. J. L.* 110, the employe was engaged to assist in hauling bricks from a property where a building had been torn down to another property in a different part of the city. The employe assisted in loading the bricks on a cart, and, after the cart was filled, walked along with it to the location where the bricks were to be unloaded. He then assisted in piling up the bricks, and, when the cart was empty, got on the wagon to return for another load. While the team was being turned in the

street, the employe was jarred from the wagon and received injuries which caused his death. In that case Mr. Justice Kalisch said that the act of the deceased in getting on the wagon after it was unloaded and riding back to the place for another load, was a natural act connected with his employment. So, in this case, it was a natural act connected with his employment to jump on the running-board of the companion truck to get back to the brick shed. If this accident had occurred while Bolos was riding upon the truck on which he was a helper, it probably would not be denied that such an accident would be one arising out of and in the course of the employment.

In *Kearon* v. *Kearon,* 45 *Ir. L. T.* 96; 4 *B. W. C. C.* 435, a seaman while off duty left the vessel. When he returned to the vessel it had moved five or six feet from the pier. The seaman seeing no ladder jumped from the pier to the vessel, with the result that his leg was injured. It was held that the accident arose out of and in the course of the employment. The court said:

"This man was rightly on shore, and, having been on shore, he was entitled to return to the vessel. When he arrived at the quay about half-past ten o'clock the vessel had moved out some five or six feet, and the top rail was about three feet lower than the level of the quay. It was his duty to get on board, and the question is not whether he adopted a way which was not exactly the right one, but whether, intending, *bona fide,* to return, he was acting in the course of his employment."

Paraphrasing this determination of the court, we may say that Bolos was rightly in the barn; that it was his duty to go from the barn back to the brick shed, and the question is not whether he adopted a way which was not exactly the right one, but whether intending, *bona fide,* to get back to the truck in the brick shed, he was acting in the course of his employment.

The judgment under review will be affirmed, with costs.