FERGUS F. FLANAGAN, RESPONDENT IN CERTIORARI, v. CHARLES E. GREEN & SON, PROSECUTOR IN CERTIORARI.

Argued October 5, 1938—Decided November 4, 1938.

328

Before Justices CASE, DONGES and PORTER.

For the prosecutor in *certiorari, Kellogg & Chance* (*R. Robinson Chance*).

For the respondent in *certiorari, Frank G. Turner*.

The opinion of the court was delivered by

CASE, J. The writ of *certiorari* brings up for review a judgment for workmen's compensation rendered by the Essex County Court of Common Pleas. At the time of the accident for which recovery was had below Fergus F. Flanagan, the employe, was sixty-nine years of age and had been in the employ of the prosecutor as machine operator since 1913. The lunch period was from twelve to twelve-thirty. Flanagan regularly ate his lunch by the machine where his work was. No special place was provided in the factory as an eating place for the employes, but it was customary, though not compulsory, for the latter to eat in the shop. On the day in question Flanagan, having finished his lunch, went to a sink in the back of the room to wash his milk bottle and on the way back to his machine stumbled over a stool and fell. As a result of the fall his left leg was broken; specifically, the trochanters at the juncture of the neck and shaft of the femur were fractured. Prosecutor, upon learning of the accident, sent Flanagan to the attending physician, and the latter

placed him in St. James Hospital. While Flanagan was at the hospital undergoing treatment for the fractured femur, his arm was injured as an incident to the changing of the bedsheets by the hospital nurses.

The determination below found that there were permanent injuries to both the leg and the arm. Compensation was allowed for those permanent injuries at $15 a week for a period of two hundred weeks.

Prosecutor's first point is that the original injury was not from an accident arising out of and in the course of the employment. The essential facts of that accident came into proof by the admission in evidence of a signed statement which prosecutor's insurer had procured from the employe. The statement was offered and admitted in evidence upon this remark made in the presence of counsel for the employer and without remonstrance from him: "* * * both parties are submitting the statement to your honor to pass upon the factual question." We construe this quoted sentence as equivalent to a stipulation by the parties that the facts of the accident were as set forth in the statement. The contention of the prosecutor upon the proposition stated above as the first point is that the facts do not show an accident "arising out of the employment." This boils down to the question whether workmen who, with the tacit consent of the employer, have established the custom of eating their noon lunch in the ambit of the machine upon which they are employed are out of their employment to the extent that they have no protection under the Workmen's Compensation act while so engaged. There is no suggestion of horseplay or skylarking. Upon the simple legal proposition thus stated the trend of the decisions in this state and the holdings in a number of other jurisdictions are that the workman is still in his employment in the sense that he is within the coverage of the compensation acts. For a review of the leading cases up to the time of the decision see *Hanna* v. *Erie Railroad Co.*, 8 N. J. Mis. R. 829. In the cited case the workman was employed by the Erie Railroad Company in the setting of valves and piston backing in engines. It was customary for the employes to eat their lunch

in the period between three o'clock and three-twenty o'clock and for some of the men to eat in the machine shop. Hanna undertook to eat his lunch in the machine shop and sat upon a machine which thereupon began operating to his serious injury and almost immediate death. It was found that the accident arose out of and in the course of the employment. That is a direct holding, as it seems to us, upon the question here involved. In *McInerney* v. *Buffalo and S. R. Corp.* (*N. Y.*), 121 *N. E. Rep.* 806, the decision went *contra* to the claim of the workman on the facts of the case, but this language is used: "It is true that it has been held many times that where an employer requests or customarily permits his employes to eat their meals upon his premises or in some place provided for them, the temporary interruption to their work thus caused will not be regarded as terminating their character as employes or as excluding them from the protection of such a law as our Compensation act." We find against prosecutor on the first point.

It is next contended that the award should not include the added disability arising out of the arm injury. The proofs sustain the factual finding of the court below that after the accident prosecutor took charge of the workman and sent him to the physician who caused him to be placed in the hospital wherein the injury occurred, the doctors on behalf of the prosecutor took charge of the treatment and that the cause of the injury was the act by the hospital nurses of changing the sheets as an incident to the treatment of the fractured femur about two weeks after the original accident. In our view the second injury was directly attributable to the first. It came in the immediate sequence of events. There was no contributing factor outside of the acts which flowed from and were made necessary by the leg injury. The changing of sheets is so essential a part of adequate hospitalization as to be routine in every hospital. The arm injury was so incidental to the medical and surgical treatment afforded by the employer as to constitute, in our opinion, an injury arising out of and in the course of the employment within the meaning of the statute.

Prosecutor's third point is that the compensation is not calculated in accordance with the statute. This has relation to the finding of the court below: "As a result of the permanent injury to the petitioner's left leg and the permanent injury to the petitioner's right arm, being two major members, I find and determine that the petitioner-appellee suffered a partial total permanent disability of forty per cent. from which the petitioner-appellee is entitled to receive compensation for the period of two hundred weeks at the compensation rate of $15 per week, none of which has been paid." The expression "partial total permanent disability" is evidently a mistake in the choice of words, as disability under the act may not at the same time be both partial and total. But a partial permanent disability may be calculated upon the value of the total permanent disability, and it is clearly that which is here intended. The court had found that the leg injury constituted a permanent disability of the leg fifty per cent. of total and that the arm injury constituted a permanent disability of the arm thirty-five per cent. of total. We accept the accuracy of those findings. The statute, *Rev. Stat.* 1937, 34:15-12, allows (r) sixty-six and two-thirds per cent. of daily wages during one hundred and seventy-five weeks for the loss of a leg and (p) sixty-six and two-thirds per cent. of daily wages during two hundred and thirty weeks for the loss of an arm; and provides that (w) in lesser cases where the usefulness of a member is permanently impaired the compensation shall bear such relation to the scheduled specific periods as the disabilities bear to those named in the schedule.

The mention of five hundred weeks in paragraph (w) as the basic period of calculating total permanent disability is corollary to the four hundred weeks allowed in paragraph (b) for disability total in character and permanent in quality and has no bearing upon calculation of compensation for partial permanent disability of members. Applying the percentages of disability found by the court to the provisions of the schedule, we find that the workman was entitled to sixty-six and two-thirds per cent. of his daily wage during eighty-seven and one-half weeks (fifty per cent. of one hun-

dred and seventy-five) and to sixty-six and two-thirds per cent. of his daily wage during eighty and one-half weeks (thirty-five per cent. of two hundred and thirty). The wage was $22.50 per week, of which sixty-six and two-thirds per cent. is $15. The result is that the workman is entitled to compensation at the rate of $15 per week over a period of one hundred sixty-eight weeks and not for the period of two hundred weeks as determined by the court below. The error in calculation seems to have been caused by the assumption, contended orally before us, as well as in the brief, on behalf of Flanagan, that paragraph (v), which makes separate provision for the loss of "both hands, or both feet, or both eyes *or any two thereof* as the result of one accident," contained a reference to "both legs." The statute formerly so provided (2 *Cum. Supp. Comp. Stat., p.* 3874 **236-11 2 (v)), but it no longer does. The allowance was not asked or allowed on the basis of the loss of a foot, which does come within present paragraph (v) but which carries a smaller compensation.

Prosecutor's fourth and final point is that the form of the *allocatur* does not restrict the scope of the review nor limit the prosecutor in the assignment of reasons. We find that to be so.

Except as to the calculation there will be an affirmance; as to it, a reversal. Costs to the prosecutor herein. As the error lies solely in the amount of the award, which we have corrected, we can see no reason for a retrial. The judgment is not of the type usually entered in this court; nevertheless there is statutory provision for an entry here, as the judgment of the Pleas, on an appeal from the bureau to it, may be here docketed. *Rev. Stat.* 1937, 34:15-66.1. It seems to us that under the doctrine of *Smith* v. *Ocean Castle,* 59 *N. J. L.* 198; *New Jersey State Board of Optometrists* v. *S. S. Kresge Co.,* 115 *Id.* 495, we should direct a correct judgment to be entered. That will be the order.