ALEXANDER HAMILTON HOTEL CORPORATION, PROSE-
CUTOR, v. BOARD OF REVIEW OF THE NEW JERSEY
UNEMPLOYMENT COMPENSATION COMMISSION AND
GEORGE C. MATHIESEN, DEFENDANTS.

Argued January 22, 1941—Decided September 16, 1941.

Before Justices CASE, DONGES and HEHER.

For the prosecutor, *Merrey & Merrey* (*Edward F. Merrey, Jr.,* of counsel).

For the defendants, *Clarence F. McGovern.*

The opinion of the court was delivered by

HEHER, J.   The essential question for decision is whether, in the fixation of unemployment compensation benefits under *R. S.* 1937, 43:21-1, *et seq.,* "tips" given directly to the employee by the employer's patrons are to be considered as a component part of the employee's "wages," where the wages to be paid by the employer are established with reference to the *quantum* of the "tips" normally received in such employment.

The employer here is the operator of the Alexander Hamilton Hotel in the City of Paterson.   On March 7th, 1939, it hired the defendant Mathiesen for service as a waiter in the hotel restaurant.   The contract of service was reduced to writing.   It provided for a "monthly wage of $33" and "two meals a day."   While the writing makes no mention of gratuities, the employer's manager conceded that the monthly wage was settled thus "on the assumption of the hotel that the waiters be allowed to accept tips."   The employee testified that the employer's headwaiter, who negotiated the contract, advised him that "the job would be good for at least $25 a week in tips and $33 a month wages," and his meals as well.   He was likewise informed, so he said, that he would be obliged to "give the bus boy 10% of" his "tips."   He was discharged on January 25th, 1940; and he thereupon made application for "benefits for total unemployment" under *R. S.* 1937, 43:21-3 and 43:21-4.   It was stipulated that "claimant's *Exhibits Nos.* 1 and 2" consist of "two small books  *  *  * in which the claimant asserted he kept a day by day record in his own handwriting of tips while he was in the employ of the  *  *  *  Hotel, and that entries" therein "indicate that during the claimant's base year" (1939) "he received as tips the sum of $66.15 during the first quarter  *  *  *, the sum of $373.43  *  *  * during the second quarter  *  *  *, and the sum of $406.35  *  *  * during the third quarter  *  *  *."

The Board of Review found that "both the employer and the claimant contemplated, at the time of entering into the employer-employee relationship, that the claimant would receive tips;" that "the expectation of tips was one of the

important inducements which led the claimant to accept the employment;" that the claimant "earned * * * · tips" in the stated sums "during his base year;" that "tips are payments made for personal services;" that here "the remuneration received by the claimant directly from the employer was so small that the claimant would not have accepted the work had it not been for the possibility of increasing his earnings through the receipt of tips;" that both parties "contemplated the tips which would be received from customers as a part of the earnings resulting from the employment;" that, "while the tips were not paid directly by the employer, they were a part of the remuneration resulting from the employment furnished by" the employer; that the employer "was able to reduce the amount of remuneration directly payable by it because of the fact that, out of the employment which it provided, the claimant was enabled to receive additional compensation in the form of tips, which compensation was necessary in order to induce the claimant to accept the employment," and, "since the employer," under *section* 43:21-7 (*d*) (2) of the act, "was liable in the first instance for contributions with respect thereto," and the parties adjusted "the wage scale in direct proportion to the amount of tips expected, the tips must be regarded as a part of the remuneration for employment and not as mere gratuities;" hence, such income is an essential part of the employee's remuneration upon which the statutory benefits are based.

This is a misapprehension of the statute. We are enjoined to interpret and apply this enactment in accordance with the expressed legislative will, rather than some supposed unexpressed intention—even though, in the view of the interpretative authority, that would be more in consonance with reason and justice. Where the terms employed to declare the legislative purpose are clear and precise, and are not of doubtful meaning, there is no room for construction. The judicial function is to enforce the revealed object as so delimited. It was one of Domat's rules of interpretation that "Laws ought to be written to the end that the writing may fix the sense of the law, and determine the mind to conceive a just idea of that which is established by the law, and that it be not

left free for every one to frame the law as he himself is pleased to understand it." 1 *Cushing's Ed.* 108. Of course, the rules laying it down that the intention may be gleaned from other acts in *pari materia,* and that that which is implied in a statute is as much a part of it as what is expressed, serve only to take cognizance of the disclosed intention of the lawgiver. And legislative enactments should be interpreted according to the natural, obvious and ordinary import of the words used as tokens of intention. When the terms are explicit, they are presumed to express the full intention of the lawmaker. This is a primary canon governing the exposition of a statute. Plain and unambiguous words not rendered dubious by the context cannot be controlled by judicial construction. "Liberal" construction does not connote a disregard of the plain meaning of the language employed to express the legislative object * * * an extension of the boundaries delineated by the terms as commonly used, unless the context clearly discloses a special usage. *Fedi* v. *Ryan,* 118 *N. J. L.* 516; *U. S. Casualty Co.* v. *Hyrne,* 117 *Id.* 547; *Passaic National Bank, &c., Co.* v. *Eelman,* 116 *Id.* 279; *Public Service Co-ordinated Transport* v. *State Board of Tax Appeals,* 115 *Id.* 97; *In re Cook's Estate,* 118 *N. J. Eq.* 288; *Bayonne Textile Corp.* v. *American Federation of Silk Workers,* 116 *Id.* 146.

So viewed, the statute under consideration is not expressive of a legislative purpose to include such gratuities as part of the employee's remuneration in the calculation of unemployment compensation benefits. The employer's "contributions" to the statutory fund are based upon the "wages payable by him." *R. S.* 1937, 43:21-7 (*b*). And the employee's "contributions" thereto are likewise a fixed percentage "of his wages paid by" the "employer with respect to his employment." *R. S.* 43:21-7 (*d*) (1). The term "wages" is defined as "remuneration payable by employers for employment;" and "remuneration" means "all compensation payable for personal services, including commissions and bonuses and the cash value of all compensation payable in any medium other than cash." *R. S.* 1937, 43:21-19 (*o*) and 43:21-19 (*p*). Thus it is that the term "wages" is categorically limited to

the remuneration "paid" or "payable" *by the employer* to the employee for the latter's service. And the definition of "remuneration" plainly is confined to such as has been "paid" or is "payable" by the employer. It is but fair to presume that, if more were within the intention of the lawmaking body, appropriate language would have been chosen to give expression to it.

The provision of *section* 43:21-7 (*d*) (2) is not indicative of a more extensive purpose. The phrase "wages * * * from some other employing unit" patently is not embracive of gratuities given to the employer's servants by the patrons of his restaurant. The definition of the term contained in *section* 43:21-19 (*g*) resolves any doubt in this regard. The section deals with contributions to the fund; and the particular provision renders the employer liable for the employee's contributions "in the first instance," with the right of deduction of such payments "from any sums payable" by him to the "other employing unit," or, "in the absence of such an employing unit, from such individual, in a civil action for debt."

Section 901 of the Federal Social Security Act of 1935 (*chapter* 531, 49 *U. S. Stat. at L.* 639; 42 *U. S. C. A.,* § 1101 (*Supp.*)) levies on the employer an excise tax based upon the "total wages" of his servants, defined in section 907 (*chapter* 531, 49 *U. S. Stat. at L.* 642, as amended by *chapter* 680, § 13 (*a*). 52 *U. S. Stat. at L.* 1110; 42 *U. S. C. A.,* § 1107 (*Supp.*)) as "all remuneration for employment including the cash value of all remuneration paid in any medium other than cash;" and the Bureau of Internal Revenue of the Federal Treasury Department has promulgated regulations excluding from the category of "wages" "tips or gratuities paid directly to an employee by the customer of an employer and not accounted for by the employee to the employer." Conceding that the Federal Social Security Act was "drafted as a pattern upon which the state laws were to be drawn," defendants nevertheless insist that "interpretations by federal administrative authorities" of the Federal act are without "bearing upon the interpretation of the New Jersey law," and the cited regulation "is not binding or controlling" in the

"administration of" the state statute. Of course, such interpretation is in no sense conclusive. As stated, we are constrained to effectuate the legislative will as written. Yet it is not wholly without significance, for it has some force, even though far from determinative, as a contemporary construction of like terms in the Federal act. The Federal and State statutes are interrelated to achieve the common object of social security (*chapter* 531, 49 *U. S. Stat. at L.* 626, as amended; 42 *U. S. C. A.*, § 501-1110 (*Supp.*)); and if a literal interpretation of these provisions of the former act serve the legislative intention, so also is that the case with the latter enactment. Its language does not reasonably admit of a broader construction. The avowed purpose is, through an excise, to achieve economic and social security and betterment in the exercise of the police power (*R. S.* 1937, 43:21-2); and it is elementary in the canons of interpretation that such an imposition is not to be extended beyond the clear import of the language by which it is laid. *Vide Gould* v. *Gould*, 245 *U. S.* 151; 38 *S. Ct.* 53; 62 *L. Ed.* 211.

Pointing out that the question is one of novel impression, defendants find an analogy in cases interpreting the workmen's compensation acts in this country and in England. But they are of no aid, for they depend upon the particular language employed, viewed in the light of the context and the object of the statute. Moreover, our Workmen's Compensation Act embodies a policy different from most. In defining the term "wages," it specifically excludes "gratuities received from the employer or others." *R. S.* 1937, 34:15-37. The absence of this or like phrase from the statute under review is of no significance, for the language there used categorically conveys that meaning, while such is not the case with the cited provision of the Workmen's Compensation Act, apart from the qualification.

The judgment of the Board of Review is accordingly reversed, but without costs.