EDWARD TOCCI, PLAINTIFF-APPELLANT, v. TESSLER & WEISS, INC., DEFENDANT-RESPONDENT.

Argued December 2, 1958—Decided January 20, 1959.

584

*Mr. Louis C. Jacobson* argued the cause for the appellant.

*Mr. Edward B. Meredith* argued the cause for the respondent.

The opinion of the court was delivered by

JACOBS, J.   The Division of Workmen's Compensation dismissed the plaintiff's claim petition and its action was sustained by the Union County Court.   Thereupon the plaintiff appealed to the Appellate Division and we certified his appeal on our own motion.

In 1948 the plaintiff Edward Tocci was employed as a jeweler by the respondent Tessler & Weiss, Inc., which then conducted its jewelry manufacturing business in a factory loft at 9–11 Franklin Street, Newark.   In 1953 the respondent moved its business to its new plant which had been constructed on a large plot of ground located at 2389 Vaux Hall Road, Union.   The plaintiff reported to the Union plant upon the completion of his two-week vacation period in July 1953.   His work was the making of engagement rings and his working hours were from 7:30 A. M. to 4:15 P. M., with luncheon from 12 noon to 12:45 P. M.   The plaintiff and the other employees were at liberty to have their luncheon at the plant premises or at any place which was close enough to enable them to return to work on time.   For about two weeks after the plaintiff began work at the Union plant he and some of the other employees went to Biertuempfel Field during their luncheon period.   Mr. Fred Tessler, described as one of the proprietors, used to come down to the field with the employees, who generally engaged in a softball

game until their return to the plant. The plaintiff testified that when he and the other employees noticed that the grassy area in back of the parking lot at the company's plant was being cut, they assumed it was for their use and they thereupon transferred their luncheon activities, including their softball game, to the plant premises. In August 1953 and thereafter the plaintiff and many other employees customarily ate their lunch and played softball daily, weather permitting, at the plant premises.

Although the softball game never took on any formal league aspects, it did furnish a recreational outlet with intracompany competition. The employees laid out the diamond in accordance with recognized regulations and set up "intershop games, the toolmakers against the jewelers"; the plaintiff expressed the view that the company benefited insofar as "the game itself made better friends of the men themselves, a better understanding with each other instead of one crowd hanging by itself, they were brought out to the field and brought in there through playing ball and they get along better." He testified that the company "supplied bats and balls for the soft ball team" and that the team scores of the "inter-shop matches" were posted inside the plant building "right over the time clock." Mr. Burke, an employee at the company's Union plant, testified that he thought that a recreational luncheon activity such as the softball game would be an aid towards better labor-management relationship, that he approached Mr. Weiss, one of the plant "owners," and asked whether he would approve the idea of "furnishing baseballs and bats," and that Mr. Weiss said he would. Mr. Burke also testified that he talked to Mr. Weiss about having a backstop made and that Mr. Weiss asked him to find out "what the necessary cost would be for having that put up, and he said he would do it." Neither Mr. Weiss nor Mr. Tessler nor any other witness was called by the respondent to refute or limit the foregoing testimony or the normal inferences to be drawn therefrom.

On October 10, 1956 the plaintiff was at the plant premises during the luncheon hour and was preparing to

engage in an inter-shop softball game. During his warm-up he attempted to backhand a flyball, lost his balance, fell and fractured his left clavicle. Thereafter, he filed his claim petition for compensation in the Division; at the close of the testimony the Deputy Director dismissed the petition upon the finding that the plaintiff was "willfully negligent" and had not established that he had suffered a compensable injury. It is clear that the Deputy Director's finding that the negligence of the plaintiff constituted a ground for barring his claim for compensation was erroneous (see *Secor v. Penn Service Garage,* 19 *N. J.* 315, 317 (1955); *Belyus v. Wilkinson, Gaddis & Co.,* 115 *N. J. L.* 43, 49 (*Sup. Ct.* 1935), affirmed 116 *N. J. L.* 92 (*E. & A.* 1936)), and in the County Court the respondent did not seek to sustain the dismissal of the petition on that ground. However, it did prevail in the County Court on its contention that the plaintiff had not suffered an accident which arose "out of and in the course of his employment," within the contemplation of the statute. *R. S.* 34:15–7.

The Workmen's Compensation Act is humane social legislation designed to place the cost of work-connected injury upon the employer who may readily provide for it as an operating expense. It sets forth that compensation shall be paid for death or injury by accident arising out of and in the course of the employment in all cases except where the injury or death is intentionally self-inflicted or when intoxication is the natural and proximate cause of the injury. *R. S.* 34:15–7. Shortly after passage of the act, Justice Trenchard noted, in *Bryant v. Fissell,* 84 *N. J. L.* 72, 77 (*Sup. Ct.* 1913), that an accident arises out of the employment if it results from a risk "reasonably incidental" thereto and that an accident arises in the course of the employment "if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." And more recently, in *Belyus v. Wilkinson, Gaddis & Co., supra,* Justice Heher similarly noted that an accident arises out of the employment when

the risk is "reasonably incident" to it and arises in the course of the employment when it occurs within its period at a place where the employee may properly be and while he is fulfilling the duties of his employment "or doing something incidental to it." The continued sweeping generality of the statutory language and its judicial definition suggest the conscientious endeavor to maintain a liberally just line between those accidental injuries which may be said to have had some work connection and those which may be said to have been unrelated to the employment. In drawing that line the courts have not rested on any legalistic formula but have sought to apply the comprehensive legislative compensation plan fairly and justly to the particular facts presented. See *Green v. DeFuria,* 19 *N. J.* 290 (1955); *Gargiulo v. Gargiulo,* 13 *N. J.* 8 (1953) ; *Saintsing v. Steinbach Company,* 1 *N. J. Super.* 259 (*App. Div.* 1949), affirmed 2 *N. J.* 304 (1949). *Cf. Stout v. Sterling Aluminum Products Co.,* 213 *S. W. 2d* 244, 246 (*Mo. Ct. App.* 1948) :

"There are many attempted definitions in the various cases of the meaning of the words 'arising out of and in the course of his employment,' but there is not, and in the very nature of things cannot be, any set formula that applies in all cases, and therefore every case involving the application of that requirement must be decided upon its own particular facts and circumstances and not by reference to some formula."

The plaintiff's injury occurred while he was engaged at the respondent's premises in a customary luncheon hour recreational activity which the respondent not only permitted but also encouraged by supplying the necessary equipment. Consequently, we need not here concern ourselves with judicial precedents where the recreational activity was not at the employer's premises or was not customary or was not encouraged by the employer. See *Konrad v. Anheuser-Busch, Inc.,* 48 *N. J. Super.* 386 (*Cty. Ct.* 1958); *Padula v. Royal Plating & Polishing Co.,* 14 *N. J. Super.* 603 (*Cty. Ct.* 1951); *Hydro-Line Mfg. Co. v. Industrial Commission,* 15 *Ill. 2d* 156, 154 *N. E. 2d* 234

(*Sup. Ct.* 1958); *Wilson v. General Motors Corporation,* 298 *N. Y.* 468, 84 *N. E. 2d* 781 (*Ct. App.* 1949). *Cf. Theberge v. Public Service Electric and Gas Co.,* 25 *N. J. Misc.* 149 (*Workmen's Comp. Bd.* 1947); *Leventhal v. Wright Aeronautical Corp.,* 25 *N. J. Misc.* 154 (*Workmen's Comp. Bd.* 1946); *Porowski v. American Can Co.,* 15 *N. J. Misc.* 316 (*Workmen's Comp. Bd.* 1937). Nor need we concern ourselves with the fact that the plaintiff was not making engagement rings when he was injured, for the law is soundly established in our State and elsewhere to the effect that an employee is not to be deprived of the benefits of the Compensation Act simply because he was not actually working when the accident occurred. Thus he may have stopped work for a coffee break or to have a smoke or to get some fresh air or to use the telephone or to satisfy other human needs incidental to his being at his place of employment; it is no longer disputed that he is generally entitled to compensation for an accidental injury which occurs during such interval. See *Crotty v. Driver Harris Co.,* 49 *N. J. Super.* 60, 69 (*App. Div.* 1958); *Buerkle v. United Parcel Service,* 26 *N. J. Super.* 404, 407 (*App. Div.* 1953); *Waskevitz v. Clifton Paper Board Co.,* 7 *N. J. Super.* 1, 3 (*App. Div.* 1950); *cf. Taylor v. 110 S. Penna. Ave. Corp.,* 117 *N. J. L.* 346 (*Sup. Ct.* 1936); *Terlecki v. Strauss,* 85 *N. J. L.* 454 (*Sup. Ct.* 1914). See also *Secor v. Penn Service Garage, supra.*

In *Waskevitz* the employee was injured while he was on his way from the room where he worked to an outer platform on another floor where he intended to smoke and get some fresh air; in *Buerkle* he was injured when he fell while carrying a battery booster which he had borrowed from his employer's premises to start the car of another employee who customarily drove him home; in *Crotty* he was murdered by another employee while he was in a brick shed on the employer's premises where he apparently had gone to smoke and rest; in *Taylor* he was injured while he was taking his customary shower at the close of his working day; and in *Terlecki* she was injured after she

had finished her work for the day and was combing her hair preparatory to going home. In each of the foregoing instances the employee was awarded compensation. In *Terlecki* the court stated that it had no doubt that the accident happened in the "course of the employment," and that while the question as to whether it arose "out of the employment" was perhaps more doubtful, the court was satisfied that it did; the opinion by Justice Swayze pointed out that while the employment was not the proximate cause of the accident "it was a cause in the sense that but for the employment the accident would not have happened." This sweeping test of causation for purposes of the Workmen's Compensation Act has been approved in recent decisions by this Court. See *Howard v. Harwood's Restaurant Co.*, 25 *N. J.* 72, 82 (1957); *Gargiulo v. Gargiulo, supra,* 13 *N. J.* at *page* 13. *Cf. Crotty v. Driver Harris Co., supra,* 49 *N. J. Super.* at *page* 72; *Pisapia v. City of Newark,* 47 *N. J. Super.* 353 (*Cty. Ct.* 1957).

Our former Supreme Court and Court of Errors and Appeals repeatedly approved compensation awards for accidental injuries which occurred at the employer's premises during the luncheon hour when the employee was not actually engaged in his work. See *Bolos v. Trenton Fire Clay & Porcelain Co.*, 102 *N. J. L.* 479 (*Sup. Ct.* 1926), affirmed 103 *N. J. L.* 483 (*E. & A.* 1927); *Hanna v. Erie Railroad Co.,* 8 *N. J. Misc.* 829 (*Sup. Ct.* 1930); *Flanagan v. Charles E. Green & Son,* 121 *N. J. L.* 327 (*Sup. Ct.* 1938), affirmed 122 *N. J. L.* 424 (*E. & A.* 1939). In *Bolos* the employee ate his lunch at a brick shed on the employer's premises and was fatally injured while riding back to the building where he worked. The compensation award to the employee's widow was sustained in an opinion by Justice Trenchard which found that the accident arose out of and in the course of the employment. In *Hanna* the employee was fatally injured by the unexpected operation of a machine on which she sat while having her lunch; in its opinion sustaining a compensation award the court relied on various judicial precedents including *Rowland*

*v. Wright*, [1909] 1 *K. B.* 963, where a workman was awarded compensation for the effects of a cat bite received while the workman was eating at the stable premises where he was employed. In *Flanagan* the employee had eaten his lunch at the machine where he worked and had gone to the rear of the room to wash his milk bottle; while returning he stumbled and broke his leg. In sustaining a compensation award in his favor the court, through Justice Case, pointed out that, although it was not compulsory, it was customary for the employees to have their luncheon at the premises and that they were not removed from the protection of the Workmen's Compensation Act during that period. In *Robertson v. Express Container Corp.*, 13 *N. J.* 342 (1953), the plaintiff was injured on the roof of her employer's premises where she had gone to have her lunch; although this court denied compensation, its opinion in no wise questioned the aforementioned decisions but found that the employee had been injured, not while engaged in "her customary lunch activity," but in the course of a promenade for purposes unrelated to her employment over a portion of the roof of her employer's premises where "she had never been before"; Justice Oliphant expressed the thought that "common sense dictated limitation in the eating of her lunch or the partaking of fresh air to an area reasonably adjacent to the place where her duties lay." See *Imre v. Riegel Paper Corp.*, 24 *N. J.* 438, 449 (1957).

While the aforecited relaxation, personal comfort and lunch hour cases in which compensation awards were sustained are here both pertinent and persuasive, this court and its predecessor courts have never actually had any previous occasion to pass upon a claim for compensation for injuries sustained during a customary luncheon period game conducted at the employer's premises with the employer's approval and encouragement. See *DuCharme v. Columbia Engineering Co.*, 31 *N. J. Super.* 167 (*App. Div.* 1954); *Harrison v. Stanton*, 26 *N. J. Super.* 194 (*App. Div.* 1953), affirmed 14 *N. J.* 172 (1954). Compare *Stevens v. Essex Fells Country Club*, 136 *N. J. L.* 656 (*Sup. Ct.* 1948), with

*Winter v. Industrial Accident Commission,* 129 *Cal. App.
2d* 174, 276 *P. 2d* 689 (*D. Ct. App.* 1954). However,
courts elsewhere have had such occasion and their decisions
may be found in 6 *Schneider, Workmen's Compensation
Text* 519 *et seq.* (1948) and 1 *Larson, Workmen's Com-
pensation* 328 *et seq.* (1952). See *Notes,* 23 *U. Chi. L.
Rev.* 328 (1956); 5 *De Paul L. Rev.* 337 (1956); 24
*Tenn. L. Rev.* 870 (1957). .*Schneider* points out (at *p.*
519) that while in many instances injuries incurred during
recreational activities have been held to be noncompensable,
the courts have generally drawn a distinction and have sus-
tained compensation awards where the recreation, such as
a game "played on the employer's premises with the knowl-
edge and acquiescence of the employer during noon hours,"
has become part of the "daily life and routine of the em-
ployee." Similarly, *Larson* points out (at *p.* 330) that
"in the typical case of injury during a noon-hour ball game
on the company's ball diamond" it is "generally held suffi-
cient that the activity is an accepted and normal one, since
it thereby becomes a regular incident and condition of the
employment." See *Sorino v. Remington Rand, Inc.,* 1 *App.
Div. 2d* 720, 147 *N. Y. S. 2d* 34 (*App. Div.* 1955); *Brown
v. United Services for Air, Inc.,* 298 *N. Y.* 901, 84 *N. E.
2d* 810 (*Ct. App.* 1949); *Geary v. Anaconda Copper Mining
Co.,* 120 *Mont.* 485, 188 *P. 2d* 185 (*Sup. Ct.* 1947); *Conk-
lin v. Kansas City Public Service Co.,* 226 *Mo. App.* 309,
41 *S. W. 2d* 608 (*Ct. App.* 1931); *Kingsport Silk Mills
v. Cox,* 161 *Tenn.* 470, 33 *S. W. 2d* 90 (*Sup. Ct.* 1930);
*Thomas v. Proctor & Gamble Mfg. Co.,* 104 *Kan.* 432,
179 *P.* 372, 6 *A. L. R.* 1145 (*Sup. Ct.* 1919).

In *Brown v. United Services for Air, Inc., supra,* the New
York Court of Appeals affirmed an Appellate Division's
judgment which had upheld a compensation award for an
injury sustained by the employee "while playing volley ball,
during the employee lunch hour, on the employer's prem-
ises"; the Appellate Division had found that "the recrea-
tion involved was afforded with the consent and encourage-
ment of the employer to such an extent as to render it an

incident of the employment." Similarly, in *Sorino v. Remington Rand, Inc., supra* [1 *App. Div. 2d* 720, 147 *N. Y. S. 2d* 35], a New York Appellate Division upheld a compensation award for injuries sustained by the employee while playing softball in an interdepartmental softball league game conducted on a diamond maintained by the employer at its premises; the court noted that, as in *Tedesco v. General Electric Co.*, 305 *N. Y.* 544, 114 *N. E. 2d* 33 (*Ct. App.* 1953), the following significant factors were present: "(1) the activities were on the premises of the employer; (2) the employer gave substantial financial support; (3) the employer could halt the program at any time." In *Thomas v. Proctor & Gamble Mfg. Co., supra,* an employee was injured at the employer's premises during her lunch hour; she and other employees had generally amused themselves during lunch hour by riding on a small truck and her injury occurred while she was on it; in sustaining a compensation award the court said:

"Inasmuch as the evidence may be regarded as establishing that the play in which the plaintiff was injured had become a settled custom, with the knowledge and indeed the express approval of the foreman in charge of the department, and without objection on the part of any one, the court is of the opinion that her injury may be regarded, not only as having occurred in the course of her employment, but as having arisen out of it." (179 *P.* at *page* 376)

In *Conklin v. Kansas City Public Service Co., supra* [226 *Mo. App.* 309, 41 *S. W. 2d* 613], the employee was injured while he was watching a noon hour indoor baseball game being played by other employees in one of the employer's buildings. The court reviewed earlier cases and concluded that the controlling point was whether, under all the circumstances, "the injury arose from something which had become an incident to the employment." Since the evidence indicated that the indoor baseball game was a customary noon hour recreational activity which took place on the employer's premises with the consent and encouragement of the employer, the court had little difficulty in finding sufficient basis for a compensation award. The *Conklin* case was cited

with full approval in *Geary v. Anaconda Copper Mining Co.,
supra* [120 *Mont.* 485, 188 *P. 2d* 187], where an employee
who was subject to call was injured during the luncheon
period while playing handball in a garage building on the
employer's premises; the handball playing was a customary
luncheon period activity which met with the employer's
approval and the court found that there was "sufficient causal
connection" to warrant the holding that the injury arose out
of and in the course of the employment. In his concurring
opinion, Chief Justice Adair noted that "most courts have
been liberal in protecting workmen during the noon hour"
and that since the employee's injury occurred on the em-
ployer's premises while he was doing something customary
which the company did not disapprove, as it might have, it
may fairly be considered that his activity was incidental
to his employment and that his injury was compensable.

In the light of all of the foregoing we have no hesitancy
in concluding that the plaintiff's accidental injury was com-
pensable under the prescribed liberal construction of the
New Jersey Workmen's Compensation Act. See *Howard v.
Harwood's Restaurant Co., supra,* 25 *N. J.* at *page* 88;
*Gargiulo v. Gargiulo, supra,* 13 *N. J.* at *page* 13. When
the employees first transferred their luncheon recreational
activity to the employer's premises the company might have
but did not order its discontinuance; on the contrary, it
approved and encouraged its continuance and in so doing
was presumably fully aware of the resultant benefits to itself
in improving the morale of its employees, in having its
employees close by so that they could readily resume their
work on time, and in having its employees engage in their
recreational activity on its own premises where it was in
a position to exercise such supervision as it might consider
appropriate. The sanctioned recreational activity at the em-
ployer's premises quickly became a customary one and was
thereafter as incidental to the employment as was the lunch-
eon itself or as would be a customary break for coffee or
a cigarette or other permitted relaxation at the premises
during the regular work day. The time, the place and the

employer's encouragement of the activity, sufficiently bespeak its relation to the employment and the accidental injury which happened during its pursuit may fairly and justly be grouped with those occurrences which may be said to have had some work connection rather than with those which may be said to have been unrelated to the employment. We are satisfied that the lower court erred in dismissing the plaintiff's claim petition and its judgment is accordingly: Reversed.

HEHER, J. (dissenting). The rationale of the majority opinion is that "* * * [w]hen the employees first transferred their luncheon recreational activity [from the public Biertuempfel Field, some three blocks from the plant] to the employer's premises the company might have but did not order its discontinuance; on the contrary it approved and encouraged its continuance and in so doing was presumably fully aware of the resultant benefit to itself in improving the morale of its employees, in having its employees close by so that they could readily resume their work on time, and in having its employees engage in their recreational activity on its own premises where it was in a position to exercise such supervision as it might consider appropriate," and the "sanctioned recreational activity at the employer's premises quickly became a customary one and was thereafter as incidental to the employment as was the luncheon itself or as would be a customary break for coffee or a cigarette or other permitted relaxation at the premises during the regular work day"; and "[t]he time, the place and the employer's encouragement of the activity sufficiently bespeak its relation to the employment and the accidental injury which happened during its pursuit may fairly and justly be grouped with those occurrences which may be said to have had some work-connection rather than with those which may be said to have been unrelated to the employment."

But there can be no such comparison, in the context of the statutory principle and policy of compensation, between

accidental injury sustained by an employee on the employer's premises while partaking of lunch or during "a break for coffee or a cigarette," and an injury suffered while playing softball for exercise or recreation, no more than there would be if such an accident occurred while in the same pursuit on the nearby Biertuempfel Field, or the adjoining neighbor's lands, or a nearby playground, with the employer's knowledge. In none of these off-premises circumstances could it be said that the injury ensued from an accident arising out of and in the course of the employment within the intendment of *R. S.* 34:15–7; and on principle it cannot be otherwise where, as here, the employer merely acquiesced in such use of its lands and there was no integrated plan of recreational activity sponsored by the employer for the mutual benefit and advantage of management and labor as, *e. g.*, in *Tedesco v. General Electric Co.*, 305 *N. Y.* 544, 114 *N. E. 2d* 33 (*Ct. App.* 1953), Froessel, J., where a company-sponsored athletic association maintained a clubhouse on the company's Schenectady premises for the social recreation of all of its employees. The claimant employee was injured in a softball game "conducted under the auspices of [the athletic association] and held on company property."

Distinguishing *Wilson v. General Motors Corporation,* 298 *N. Y.* 468, 84 *N. E. 2d* 781 (*Ct. App.* 1949), it was pointed out, that in *Tedesco* the employer's financial support of the program was "substantial, not slight"; the "control by the employer was dominant" and "advertising and business advantage benefited the employer." Employer "dominance and benefit" were deemed to be the determinative factors. In a word, it was said that all the activities of the athletic association "are obviously carried out with the sole purpose of providing an integrated plan of recreational activity in which the employer is dominant," and "[h]owever beneficent to the employees such plan may be, its primary motivation is undoubtedly the furtherance of employee relations and the building of an *esprit de corps* and good will which redound to the benefit of the employer." Again, it was declared that the decisive circumstances "are those indica-

tive of domination by or benefit to the employer," divided roughly into "classifications of finances, interrelationship and control." It was shown that the employer subsidized the operations of the association to the extent of $55,277 over an eight-year period, and the association, in turn, paid over to the employer, during a four-year period, upwards of $2,000 in excess of current charges; and that the games "attracted spectators from the general public, who were permitted to attend without charge—all of which advertised the employer." It was found that there was an "inseparable connection with the employment," and "complete and ultimate control" by the employer, "not only possessed, but exercised, * * *."

In *Wilson* the employees organized a softball league of 14 teams, "[u]pon their own initiative, without suggestion or encouragement from the management," although "the employer paid for the equipment and permitted conferences relating to the contests on company time and on the company's premises"; and the holding was, Fuld, J., that the ball games were "out-of-hours, off-the-premises personal diversions of the men, and were not only optional with the employees but were exclusively for their own recreation and indulgence, without business advantage to the employer"; the games were neither "initiated nor sponsored" by the employer; the employer exerted no "compulsion or restraint" upon the employees to participate; permission to take part in the games and the employer's cooperation in the program were not enough; there was no evidence of "any business advantage or benefit accruing to the company from the employees' participation in the contests"; "[t]oo tenuous and ephemeral is the possibility that such participation might perhaps indirectly benefit the employer by improving the workers' morale or health or by fostering employee good will"; nor does it matter that the "employer acquiesced in, or contributed some financial aid to, such activities"; the "slight support thus given by the employer, without attendant advertising or consequent business advantage, should be accepted for what it really was, a

gratuitous contribution to its employees' social and recreational life."

Chief Judge Conway's dissent in this case, proceeding on the premise of a conclusive finding by the referee below that the claimant was injured while "playing baseball on a team promoted and encouraged by the employer," supported by a statutory presumption of a compensable accident, declares that "moral suasion exerted by the employer is a very real factor in any employment," and "where an activity—different from the employee's regular duties and even recreational in nature—is encouraged, promoted or subsidized by the employer, there is a strong compulsion upon the employee to participate in the outside activity," · and the court "must recognize this human reaction and the social pressures that prompt it"; and the finding below that the employer "derived business benefit from its promotion and encouragement of the activity" was accepted as resting upon substantial evidence.

There was no such "compulsion" or employer "benefit" in the case at hand. The play did not become a part of the service of the employee.

To be compensable, the accident must arise out of and in the course of the employment; this definitive term cannot be enlarged under the guise of a liberal construction. Jurisdiction must be certain and definite; the grant is not to be expanded beyond its defined limits. *Magnolia Development Co., Inc. v. Coles,* 10 *N. J.* 223 (1952); *Alexander Hamilton Hotel Corporation v. Board of Review,* 127 *N. J. L.* 184 (*Sup. Ct.* 1941). The accident here does not meet the statutory test.

An accident arises out of the employment if it ensues from a risk reasonably incident to the employment. A risk is an incident of the employment when it belongs to or is connected with what the workman has to do in fulfilling his contract of service. If the danger was one to which the employee was exposed because of the nature of his employment, the accident arose out of the employment. It is in this category if there be a causal relation between the injury and the conditions under which the work is required

to be done. The service is then a contributory proximate cause; the injury is traceable to a hazard of the employment. *Gellman v. Reliable Linen & Supply Co.,* 128 *N. J. L.* 443 (*E. & A.* 1942); *Stevens v. Essex Fells Country Club,* 136 *N. J. L.* 656 (*Sup. Ct.* 1948).

Here, the employer neither initiated nor sponsored the playing of softball during the noon hour when the employees' time was their own, to be used as they saw fit; the employer merely suffered the use of its open land for that purpose, and it does violence to the realities to hold that thereby, in not peremptorily forbidding such play by the choice of the employees themselves, it elected to assume the statutory liability to make compensation for accidental injuries resulting from such play as mishaps arising out of and in the course of the employment. The employer made no contribution to the use thus made of its lands, save to supply a few bats and balls; and it was not seeking nor did it receive any benefit or advantage from such use. The reasoning to the contrary is illusory. The 30 or 35 employees (the working staff was in excess of 100) who used the land for play were in the pursuit of their own desires, unrelated to the employment, just as much so as the employee who, for his own purposes, deviates from the employment while still on the employer's premises and is therefore so far removed from the employment as to be outside of the statutory coverage.

The principle of "mutual benefit" has no application. There is no basis for the conclusion that the course taken was so designed. There is no ground for the inference that such use of the land was in contemplation as an integral part of the service. The risk of harm was not one to which the employee was exposed because of the nature of his employment; what he was doing at the time was not the rendition of service under the employment contract, nor was it reasonably incidental to such service; and so the requisite causal relation is lacking. Generosity alone to one's employee does not render one liable for compensation under the act for injury suffered while in the enjoyment of the favor, even though there be reciprocal good will and a

heightening of morale. Such is not within the ambit of the employment. To have that quality, the thing done must be so closely identified with the service as to be part and parcel of it. *Stevens v. Essex Fells Country Club, supra.* Compare *Clark v. Chrysler Corporation,* 276 *Mich.* 24, 267 *N. W.* 589 *(Sup. Ct.* 1936); *Pate v. Plymouth Mfg. Co.,* 198 *S. C.* 159, 17 *S. E. 2d* 146 *(Sup. Ct.* 1941).

I would affirm the judgment.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS and PROCTOR—5.

*For affirmance*—Justices HEHER and WACHENFELD—2.