ELIZABETH ROBERTSON, PETITIONER-APPELLANT, v. EXPRESS CONTAINER CORP., DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 25, 1953—Decided June 12, 1953.

Before Judges EASTWOOD, BIGELOW and JAYNE.

*Mr. Alexander Avidan* argued the cause for the petitioner-appellant (*Messrs. Avidan & Avidan* and *Mr. Abraham Levine,* attorneys).

*Mr. Sidney M. Schreiber* argued the cause for the defendant-respondent (*Messrs. McKeown, Schreiber, Lancaster & Demos*, attorneys; *Mr. Roger F. Lancaster*, on the brief).

On appeal from the Essex County Court wherein Judge NAUGHRIGHT filed the following opinion:

"The Division of Workmen's Compensation, Department of Labor and Industry, denied petitioner's claim for compensation for injuries she suffered from an accident that occurred on July 10, 1951, on the ground that the accidental injuries suffered by petitioner did not arise out of and in the course of her employment. From this decision the petitioner appeals.

"There is little dispute as to the facts, they are as follows:

"Petitioner has been employed by the respondent for the past several years as a cleaning woman. Her job was to clean the second-floor offices of the respondent company. She came to work at 4:30 P. M. and would stay until 11 P. M., taking time off during this period to eat her lunch. The office force would usually leave at 5 P. M. and petitioner was pretty much on her own. She received little, if any, supervision in her work; she ate lunch when and where she wished and could take as much time for it as she desired.

"When petitioner began working for respondent she was furnished cleaning equipment and a closet to store it in. This closet was located in the area of the offices. Petitioner continued to use the closet for storing the equipment for about a year, when some of the office staff complained of a damp smell and petitioner, believing the cleaning mops may be causing it, commenced storing her cleaning equipment on the roof of respondent's premises which could be reached via a door in the office area.

"Respondent is engaged in the manufacturing business and it would be well at this point to describe the premises in question. The offices that petitioner cleans are on the second floor of its plant. The section of the plant immediately adjoining the offices is one story in height. A door leads

from the offices to the roof of the one-story section. The one-story section is divided into different heights, so that going through the previously mentioned door one may reach three different sections of different heights of roof covering the same building. There are ladders to assist in ascending or descending to the different heights of the roof.

"On the day in question petitioner had commenced her cleaning duties as usual, and at about 7 P. M. went out on the roof to eat her lunch. It was her custom to do so during the summer months. This was done without either the approval or disapproval of respondent and, so far as we have been able to determine from the testimony, without his knowledge.

"A few days before the day in question there was a propane fire at Port Newark. Petitioner desiring to see if there was still smoke coming from this fire which was some distance away, left the first section of the roof and climbed the ladder to the next height or second section of the roof. While on the second section petitioner desired to go to the next elevation or third section of the roof. While walking toward the ladder to reach this third elevation she walked on a glass section of the roof. She fell through this glass section a distance of some 30 feet to the floor below.

"Petitioner candidly admits that her only motive in wanting to see if the fire was still smoking was to satisfy her curiosity.

"It is admitted that petitioner is an employee of the respondent and that she met with an injury caused by an accident. To warrant a recovery it must appear that the accident (a) arose out of, and (b) in the course of her employment. The pertinent part of our workmen's compensation act was first construed in *Bryant v. Fissell*, 84 *N. J. L.* 72 (*Sup. Ct.* 1913), wherein the court said,

" 'Even if there be an accident which occurred "in the course of" the employment, if it did not arise "out of the employment," there can be no recovery; and even though there be an accident which arose "out of the employment," if it did not arise "in the course of the employment," there can be no recovery. * * *

'For an accident to arise out of and in the course of the employment, it must result from a risk reasonably incidental to the employment. As was said by Mr. Lord Justice Buckley in *Fitzgerald v. Clarke & Son* (1908), 2 *K. B.* 796. "The words 'out of' point, I think, to the origin and cause of the accident; the words 'in the course of' to the time, place and circumstances under which the accident takes place. The former words are descriptive of the character or quality of the accident. The latter words relate to the circumstances under which an accident of that character or quality takes place. The character or quality of the accident as conveyed by the words 'out of' involves, I think, the idea that the accident is in some sense due to the employment. It must be an accident resulting from a risk reasonably incident to the employment."

'We conclude, therefore, that an accident arises "in the course of the employment" if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time.'

"The test set forth in the *Bryant* case, *supra*, was used in *Bolos v. Trenton Fire Clay and Porcelain Company*, 102 *N. J. L.* 479 (*Sup. Ct.* 1926), wherein the petitioner was awarded compensation on account of the death of her husband. The facts of that case were as follows: At the regular lunch time the decedent left his employer's truck, on which he was a helper, at the brick shed on his employer's premises, and ate his lunch at the barn, also on the premises. When the whistle blew for him to resume work at the termination of the noon recess, he started for his truck. Observing another of his employer's trucks starting from the vicinity of the barn and going to the brick shed, he jumped upon its running board. To get to the brick shed it was necessary for the truck to travel about 600 feet, in part over a public street abutting and paralleling a part of the premises. In turning back from the street into the premises the decedent was thrown from the truck and killed.

"The court in determining that the accident arose out of and in the course of decedent's employment, stated that decedent was rightly in the barn and that his method of returning to the brick shed was reasonable.

"In the case presented to us we are squarely faced with the question of whether petitioner on the second elevation of

the roof, at the point where the ladder leads to the third section of the roof and where the accident occurred, was rightly at that position.

"The *Bryant* case, *supra,* and the *Bolos* case, *supra,* were both cited in *Bubis v. Flockhardt Laundry Co.,* 119 *N. J. L.* 136 (*Sup. Ct.* 1937), affirmed in 120 *N. J. L.* 177 (*E. & A.* 1938). In that case petitioner and his fellow employees who worked in an unheated building were accustomed to build fires in crude stoves for their comfort, and on the morning of the accident, petitioner, thinking the fire in the stove had gone out, poured gasoline in it preparatory to kindling a new fire. There were embers still burning in the bottom of the stove, however, which caused a flare-up of the gasoline, and petitioner was badly burned. The court in awarding petitioner compensation quoted from 71 *C. J.* 672, 'The injuries of an employee incurred in protecting himself from cold have been held to arise out of and in the course of employment.'

"In *Waskevitz v. Clifton Paper Board Co.,* 7 *N. J. Super.* 1, 71 *A. 2d* 646 (*App. Div.* 1950), certification denied 4 *N. J.* 561 (1950), the Superior Court, Appellate Division, presented with a set of facts that contained elements of both the *Bolos* case, *supra,* and the *Bubis* case, *supra,* allowing compensation, stated:

" 'The courts have held that the employee's performance of acts of personal comfort may be reasonably incident to the employment and have sustained awards for accidents occurring while the employee was obtaining a smoke or a breath of fresh air. * * * Indeed, they have recognized that, in the light of the modern labor-management relationship, the employer's furnishing of facilities to the employee for such relaxation during the work day might well be considered as designed for their mutual benefit rather than the exclusive benefit of the employe. * * *'

"Appellant contends that the *Waskevitz* case, *supra,* is analogous to his case, and that in fact the *Waskevitz* case goes further than the case before us now. We disagree with appellant. In the *Waskevitz* case the deceased was employed in a room that was hot and humid. In view of the unpleasant

working conditions the employees would customarily go to 'drop off' doors leading to the outside for the purpose of having a smoke and obtaining a breath of fresh air. There was no objection by the employer to this practice. It was while decedent was going to have a smoke and breath of fresh air that he met his death.

"In the case before us we do not have the petitioner obtaining relief from any unpleasant working conditions. Though conceivably she may go out on the first section of the roof for a breath of fresh air and to eat her lunch, her only motive in climbing to the higher sections of the roof was to see a fire, or the smoke therefrom. She was not doing an act with either the express or even tacit approval of her employer.

"This court is aware that employees have received compensation for injuries caused by accident while the employee was engaged in some act of curiosity. In *Bethlehem Steel Co. v. Parker*, 64 *F. Supp.* 615 (*D. C. Md.* 1946), petitioner was working aboard a vessel that was being repaired by her employer. She received permission to obtain a drink of water at a drinking fountain aboard the vessel. On her way back from the fountain, over a permissive route of travel, she saw a dumb waiter shaft and being curious, placed her head inside the shaft to look upward. At that moment the descending dumb waiter struck the petitioner. The court in awarding petitioner compensation said,

" 'But it is also clear on the facts that her action was not in any sense a striking or intentional departure from her duties but at most a slight and casual one occasioned apparently by not unnatural curiosity on her part to see something which attracted her in her unusual environment arising in the course of her general duty to return to her work on the upper deck.'

"In the case presented before us we do not have the petitioner employed in an unusual environment nor do we have accident occurring at a place where petitioner would customarily traverse or be.

"Appellant and respondent both in their briefs cite 7 *Schneider on Workmen's Compensation, sec.* 1617, *p.* 4 *et seq.* We quote therefrom.

" 'Thus, slight and temporary departures from work, by an employee, in ministering to his personal health, comfort and necessities, such as by warming himself, seeking shelter, seeking relief from sudden illness, or leaving work to attend to calls of nature, to procure food or drink, or fresh air, or even to relax, or smoke, have been frequently held not to break the course of the employment.

'In qualification or limitation of the foregoing rules, it has been held that not every act of a personal character is compensable. While the "mere fact that an employee is performing a personal act when injured does not *per se* bring him without the purview of the compensation law," by definition, where an act is done by the employee for his personal comfort and convenience, which is not reasonably essential for his health and conducive to the proper conduct of his work, but is merely for his own accommodation or advantage, without any connection with his work, it is not incidental to his employment, and injury arising therefrom is not compensable.

'An employee, while employed, may not do "anything he likes for his 'personal health, comfort,' and 'convenience' and still claim to be acting within the sphere of his employment. These acts must be 'essential' thereto, in order that he may maintain his health and properly perform the duties for which he is being paid."

'While the mere fact that an employee attends to a personal demand does not break the continuity of the employment, the right to thus attend to his wants "cannot be construed as a privilege to roam anywhere upon his employer's premises."

'The test to be applied in such a situation to any act or conduct of an employee which does not constitute a direct performance of his work is whether it is reasonably incident thereto, or whether it is so substantial a deviation as to constitute a break in the employment and to create a formidable independent hazard.'

"We believe the above section of *Schneider* is in accord with *Rosenberg v. Biboni and Co.,* 25 *N. J. Misc.* 397 (*C. P.* 1947), wherein petitioner who was employed as a sewing machine operator was injured while pressing a pair of his own trousers. Petitioner further showed that many of the employees on numerous occasions, to the knowledge of the employer, had used the pressing machine for personal purposes. The court in denying compensation held that an employee may not do anything he likes for his 'personal

comfort and convenience,' and still claim to be acting within the sphere of his employment. These acts must be 'essential' thereto, in order that he may maintain his health and properly perform the duties for which he is paid.

"In the case at bar the petitioner in going to look for smoke from a distant fire was not performing an act which was reasonably incidental to her employment. It cannot be said that the type of work the petitioner performed was unusual or was performed among strange surroundings so as to stimulate curiosity. A fire is an event that will and does stimulate curiosity. The curiosity occurs wherever one is and regardless of what he is doing. The fact that one is at work when the stimulus occurs does not, *per se,* make the curiosity, or the satisfaction of it, an act that was reasonably incidental to the employment. To hold otherwise would be tantamount to making every act that occurred during working hours on the employer's premises an act that 'arises out of and in the course of employment.' If petitioner's act of satisfaction of her curiosity is within the scope of her employment we would be taxed to imagine an act that was without the scope of employment.

"Conceivably every act an employee does is in some manner incidental in some degree to his employment. Attending the theater in the evening is relaxing and may well better prepare a worker for the grind and stress of the ensuing day's work. A vacation in Florida may well restore a worker for the coming winter's efforts on behalf of the employer. The need for the vacation may well have arisen from the past months of employment, yet an injury sustained in traveling to and from the place of vacation would not be compensable. *Cf. Miller v. Bill Miller's Riviera, Inc.,* 21 *N. J. Super.* 112, 90 *A.* 2d 889 (*App. Div.* 1952).

"Even had the petitioner's act been one that was reasonably incidental to her employment, she cannot elect to go outside the working area to a place of danger to satisfy her whim. *Monahan v. Hoage,* 67 *App. D. C.* 174, 90 *F.* 2d 419 (1937); *Relay v. Continental American Life Insurance Company,* 22 *N. J. Misc.* 347 (*C. P.* 1944).

"For the reasons above given the judgment of the Workmen's Compensation Division, Department of Labor and Industry, is affirmed and the claim petition hereby dismissed."

PER CURIAM. The judgment is affirmed for the reasons expressed in the opinion of Judge NAUGHRIGHT in the court below.

For affirmance: Judges EASTWOOD and JAYNE.

For reversal: Judge BIGELOW.

BIGELOW, J. A. D. (dissenting). Petitioner regularly reported for work at 4:30 in the afternoon and usually completed her task about 11 P. M. It was entirely reasonable and proper for her, at 7 o'clock or thereabouts, to take half an hour as a lunch period and eat a light lunch on the premises and there relax a few minutes before resuming work. This she did every evening, and it was during the half-hour lunch period that she met with the accident which was the basis of this proceeding.

An accident is deemed to arise in the course of the employment "if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time." *Bryant v. Fissell*, 84 *N. J. L.* 72 (*Sup. Ct.* 1913). In order that the employee may be entitled to compensation, he need not be actually working at the moment of the accident. *Macko v. Herbert Hinchman & Son*, 24 *N. J. Super.* 304 (*App. Div.* 1953), and earlier cases there cited. He may be doing something without any connection with his work and still be within the statute. It is well established that a lunch and rest period spent on the premises does not interrupt the employment so as to disentitle the workman to compensation for an accident happening in that period. *Hanna v. Erie R. Co.*, 8 *N. J. Misc.* 829 (*Sup. Ct.* 1930); *Flanagan v. Charles E. Green & Son*, 121 *N. J. L.* 327 (*Sup. Ct.* 1938), affirmed 122 *N. J. L.* 424

(*E. & A.* 1939); *Blovelt v. Sawyer* (1904), 1 *K. B.* 271 (*C. A.*); *Thomas v. Proctor & Gamble,* 104 *Kan.* 432, 179 *P.* 372 (*Kan. Sup. Ct.* 1919), 6 *A. L. R.* 1145, and *note* at *p.* 1151. The subject is considered at length in *Larson, Workmen's Compensation,* § 21.

A workman is probably outside of the protection of the statute if the accident occurs at a part of the premises where he is forbidden to go or where it is unreasonable for him to venture, either because of some obvious hazard or because it is too distant from the part of the curtilage where he performs his work. But the fact of the accident does not of itself show that the employee took an unreasonable risk, else there could be no recovery of compensation in any case of this kind. In *Hanna v. Erie R. Co., supra,* the workman went from that part of the Secaucus railroad yard where he did his work, to the machine shop—an unspecified distance away—and there sat on a lathe to eat his lunch. In *Macko v. Hinchman, supra,* the scene of the accident was about 500 feet from the immediate site of decedent's work. In the present case, a study of the photographs indicates that the accident occurred not more than 100 feet or so from the rooms where petitioner worked. To reach it, she climbed five steps on an iron ladder and had four steps more to climb on another ladder in order to reach her desired lookout. There was nothing that seemed risky in what she did and nothing unreasonable. In my opinion, she did not depart from her employment. The judgment ought to be reversed.